UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


AXIS OILFIELD RENTALS,                    CIVIL ACTION
LLC

VERSUS                                    NO: 15-1627

MINING, ROCK, EXCAVATION                  SECTION: "J"(4)
AND CONSTRUCTION, LLC,
ET AL

## ORDER & REASONS

Before the Court is a *Motion to Transfer Pursuant to 28 U.S.C. § 1404 or Alternatively Motion to Dismiss for Forum Non Convieniens* [sic] **(Rec. Doc. 15)** filed by Defendants, Mining, Rock, Excavation and Construction LLC (formerly known as Atlas Copco Construction Mining Technique USA LLC), individually and on behalf of its business unit Chicago Pneumatic Construction Equipment ("MREC"), and Atlas Copco Compressors LLC ("ACC"); an opposition thereto (Rec. Doc. 16) filed by Plaintiff, Axis Oilfield Rental, LLC ("Axis"); and a reply (Rec. Doc. 23) filed by Defendants. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This action was filed by Axis in state court on March 25, 2015, seeking damages related to Axis's purchase of air compressors from Defendant MREC. (Rec. Doc. 1-1.) Defendants

removed the action to this Court on May 13, 2015. (Rec. Doc. 1.)

Axis alleges causes of action for redhibition, breach of

contract, and negligent misrepresentation against Defendants

because of alleged defects in certain air compression equipment

allegedly manufactured, sold, and supplied by Defendants. (Rec.

Doc. 1-1, at 3-9.)

On August 7, 2012, Axis submitted a credit application with

MREC. (Rec. Doc. 15-2.) The credit application, signed by Axis's

president, stated that Axis, "intending to be legally bound

hereby, herein agrees and will comply with Atlas Copco CMT USA

LLC's Terms and Conditions of sale, located on page three (3) of

this application." *Id.* The terms and conditions of sale on page

three of the credit application included the following forum

selection clause:

> **(d) Governing Law:** . . . Any dispute, claim, or
> controversy between Purchaser and Atlas Copco related
> to these terms and conditions that cannot be resolved
> through good faith negotiations may be adjudicated
> only in a court of competent jurisdiction in Denver,
> Colorado[.]

*Id.* at 4. Axis purchased a total of forty-one air compressors

from MREC; however, Axis claims it has never borrowed funds from

MREC under the credit application. (Rec. Doc. 16, at 2.)

The terms and conditions of sale, containing the same forum

selection clause, were also allegedly included on the reverse of

one invoice that Axis received in connection with a shipment of

the air compressors at issue.[1] (Rec. Doc. 15-1, at 2.) Defendants claim that Axis purchased five air compressors from MREC in 2013. (Rec. Doc. 15-3, at 2.) The invoice for this purchase, dated May 7, 2013, allegedly included a forum selection clause on the back side of the front page. However, the parties dispute whether Axis ever received the back side of the invoice. (Rec. Docs. 15-1, at 3 n.3; 16, at 2.)

Defendants filed the instant *Motion to Transfer Pursuant to 28 U.S.C. § 1404 or Alternatively Motion to Dismiss for Forum Non Convieniens* [sic] **(Rec. Doc. 15)** on August 14, 2015. Axis filed its opposition (Rec. Doc. 16) on September 14, 2015, and Defendants filed their reply (Rec. Doc. 23) on September 23. The Court now considers the motion on the briefs.

## PARTIES' ARGUMENTS

Defendants ask the Court to either transfer this case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a) or, alternatively, to dismiss this case pursuant to the doctrine of *forum non conveniens*.[2]

---

[1] Although Axis alleges that it purchased the forty-one air compressors in two sales, thirty-four compressors on March 6, 2014, and an additional seven on April 30, 2014 (Rec. Doc. 1-1, at 3), Defendants claim that the forty-one air compressors were actually sold in four separate sales: five compressors shipped on May 7, 2013; twenty-seven shipped on March 4, 2014; seven shipped on April 11, 2014; and two shipped on June 10, 2014. (Rec. Doc. 15-1, at 2 n.2.) Exhibit B attached to Defendants' motion includes invoices dated May 2013, March 2014, April 2014, and July 2014, totaling forty-one air compressors allegedly sold to Axis. (Rec. Doc. 15-3.)

[2] The forum selection clause at issue does not mandate a federal forum, but rather a forum located in Denver, Colorado. The United States District Court for the District of Colorado as well as the Colorado 2nd Judicial District

3

Defendants argue that Axis expressly agreed to the forum selection clause when it first sought to do business with MREC, by submitting the credit application. (Rec. Doc. 15-1, at 4.) Further, Defendants argue that Axis is bound by the forum selection clause "as a result of the course of dealings between the parties" because the forum selection clause was contained on the back of the invoice Axis received in 2013. *Id.* at 4-5. Regarding the scope of the forum selection clause, Defendants argue that the clause is broadly worded to apply to "any dispute" related to the terms and conditions, which includes Axis's claims because they are related to the sale of the air compressors. *Id.* at 6. Consequently, Defendants contend that the forum selection clause is enforceable and that Axis bears the burden of "showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 8 (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013)).

In response, Axis argues that the enforceability of the forum selection clause is not at issue; rather, "[t]he presence of the forum selection clause between the parties is the determinative point, and the burden remains with the Defendants." (Rec. Doc. 16, at 4.) First, Axis argues that the

---

Court, a state court of general jurisdiction, are both located in Denver, Colorado. Accordingly, Defendants ask that the Court transfer this case to the federal forum pursuant to § 1404(a) or dismiss the case under the doctrine of *forum non conveniens*. (Rec. Doc. 15-1, at 9 n.6.)

forum selection clause in the credit application does not apply to its claims in this litigation. According to Axis, it never borrowed any funds under the credit application, the purchases at issue were not made pursuant to the credit application, and its claims are not related in any way to the credit application. *Id.* at 2. Axis contends that submission of a credit application does not start a business relationship between Axis and Defendants in which all possible future transactions between the parties are governed by the credit application's terms and conditions. *Id.* Second, Axis argues that the parties did not agree to a forum selection clause in the 2013 sale of equipment. *Id.* at 3. Axis maintains that Defendants provided it with a sale document for its signature via an email that included only the front page of the May 7 invoice. *Id.* According to Axis, "The email did not include the opposite side of the invoice which stated terms and conditions, including a forum selection clause, which were unknown to and not agreed to by Axis." *Id.* Therefore, Axis contends that the signed invoice, which did not include a forum selection clause, is the contract between the parties. *Id.*

In their reply, Defendants argue that there is no language in the credit application agreement limiting the application of the forum selection clause to disputes arising out of the credit application or excluding future transactions between the parties. (Rec. Doc. 23, at 2-3.) Next, Defendants argue that

even if Axis did not receive the back side of the May 7, 2013,
invoice, Axis was put on notice that additional terms and
conditions applied to the sale because the front of each invoice
contained the statement, "THE ADDITIONAL TERMS AND CONDITIONS ON
THE NEXT PAGE OF THIS INVOICE ARE MADE PART OF THIS INVOICE."
*Id.* at 4-5. According to Defendants, Axis's argument ignores the
fact that it already agreed to the terms and conditions by
signing the credit application and received over one hundred
invoices that referenced those terms and conditions. *Id.* at 5.
Lastly, Defendants maintain that they dispute Axis's contention
that it did not receive the reverse side of each invoice. To the
extent that this Court believes that factual disputes exist that
are material to the determination of the existence of a forum
selection clause in the parties' agreement, Defendants contend
that an evidentiary hearing is appropriate. *Id.* at 5 n.8.

## LEGAL STANDARD

The proper procedure for enforcing a forum selection clause
that points to a particular federal district is a motion to
transfer venue pursuant to 28 U.S.C. § 1404(a).[3] Section 1404(a)
states that "[f]or the convenience of parties and witnesses, in

_____

[3] The appropriate way to enforce a forum selection clause pointing to a state
forum is through the doctrine of *forum non conveniens*. Section 1404(a) is
merely a codification of the doctrine of *forum non conveniens* for the subset
of cases in which the transferee forum is within the federal court system.
Both § 1404(a) and the *forum non conveniens* doctrine from which it derives
entail the same balancing-of-interests standard. Therefore, courts should
evaluate a forum selection clause pointing to a nonfederal forum in the same
way that they evaluate a forum selection clause pointing to a federal forum.
*Atl. Marine*, 134 S. Ct. at 580.

the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The moving party has the burden of showing "good cause" for a transfer by clearly demonstrating that a transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (quoting 28 U.S.C. § 1404(a)). Thus, if the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. *Id.*

   In the typical case not involving a forum selection clause, a court considering a § 1404(a) motion must determine whether a transfer would serve "the convenience of the parties and witnesses" and otherwise promote "the interest of justice." In making this determination, the court should consider the public and private interest factors adopted by the Fifth Circuit. "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). "The public interest factors are: '(1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.'" *Id.* The above-listed factors are not necessarily exhaustive or exclusive, and none should be given dispositive weight. *Id.* Furthermore, unless the balance of factors strongly favors the moving party, the plaintiff's choice of forum should not be disturbed. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989).

The presence of a valid, mandatory forum selection clause, however, requires the court to adjust its usual § 1404(a) analysis in three ways. *Atl. Marine*, 134 S. Ct. at 581. "First, the plaintiff's choice of forum merits no weight." *Id.* "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court should not consider the parties' private interests; it may consider only public interests. *Id.* at 582. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Therefore, the court must "deem the private-

interest factors to weigh entirely in favor of the preselected forum." *Id.* Third, a transfer of venue premised on enforcement of a valid forum selection clause "will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

In *Atlantic Marine*, the United States Supreme Court adjusted the typical § 1404(a) analysis because "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). The party who is acting in violation of the forum selection clause bears the burden of showing that the public interest factors "overwhelmingly disfavor a transfer." *Id.* at 583. Because the public interest factors will rarely defeat a transfer motion, "the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582. In sum, when a defendant files such a motion, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.

## DISCUSSION

The parties do not dispute that the credit application signed by Axis through its president on August 7, 2012, contained a mandatory forum selection clause; they do, however,

dispute its scope. Before a court will enforce a forum selection clause, it must first determine "whether the clause applies to the type of claims asserted in the lawsuit." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 616 (5th Cir. 2007) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 692 (8th Cir. 1997)). The court must "look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause[]." *Id.* (quoting *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222 (5th Cir. 1998)). "[I]f the substance of [the plaintiff's] claims, stripped of their labels, does not fall within the scope of the clause[], the clause[] cannot apply." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

Page three of the credit application agreement, titled "Terms and Conditions of Sale," includes a forum selection clause. (Rec. Doc. 15-2.) The forum selection clause states, "Any dispute, claim, or controversy between Purchaser and Atlas Copco related to these terms and conditions that cannot be resolved through good faith negotiations may be adjudicated only in a court of competent jurisdiction in Denver, Colorado." *Id.* at 4. "Purchaser" is defined as "the party purchasing any machine, rig, equipment, material, parts, accessories, or any other item or services ('Products') from Atlas Copco." *Id.*

"Atlas Copco" refers to MREC, which was formerly known as Atlas Copco Construction Mining Technique USA LLC. *See id.*

The operative language of the forum selection clause in the credit application is "[a]ny dispute, claim, or controversy . . . related to these terms and conditions." As a general rule, courts read forum selection clauses broadly, "in keeping with the public policy favoring their use." *Chalos & Co., P.C. v. Marine Managers, Ltd.*, No. 14-2441, 2015 WL 5093469, at *5 (E.D. La. Aug. 28, 2015) (quoting *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 432 (E.D.N.Y. 2014)). Furthermore, the use of expansive language such as "any dispute" is generally indicative of the broad scope of a forum selection clause. *Cf. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 225 (2d Cir. 2001) (construing the language "[a]ny dispute" in an arbitration clause). Similarly, the language "related to" is typically defined broadly and does not necessarily signify a causal connection. *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) (finding that the phrase "related to" is equivalent to the phrases "in connection with" and "associated with" and has a much broader meaning than the phrase "arising out of").

Here, the forum selection clause in the credit application agreement is quite broad. Although Axis argues that the clause only applies to disputes "arising out of the credit

11

application," the clear language of the clause provides that it applies to any dispute "related to these terms and conditions." Furthermore, Axis's argument ignores the first paragraph of the terms and conditions in the credit application, which states as follows: "**1. GENERAL.** . . . These terms and conditions of sale will govern the sale by Atlas Copco of all Products." (Rec. Doc. 15-2, at 4.) This provision, when read in conjunction with the forum selection clause, evinces the parties' intent to resolve all disputes related to Axis's purchases from MREC in Denver, Colorado, not just purchases made pursuant to the credit application. Therefore, interpreting the clause broadly, the Court finds that the language "[a]ny dispute . . . related to these terms and conditions" encompasses all disputes associated with Axis's purchase of air compressors from MREC.

Defendants argue that the forum selection clause applies to all of Axis's claims and, therefore, the entire case should be transferred. As Axis correctly points out, however, Defendants acknowledge that only the terms and conditions in the credit application and the invoice dated May 7, 2013, included a forum selection clause. Beginning on January 1, 2014, MREC included an amended "Terms and Conditions of Sale" that did not contain a forum selection clause. (Rec. Doc. 15-1, at 2.) In fact, the amended terms and conditions provided, "**17. Miscellaneous.** . . . THESE TERMS CONTAIN THE ENTIRE AGREEMENT BETWEEN SELLER AND

BUYER WITH RESPECT TO TERMS AND CONDITIONS AND SUPERSEDE ALL PREVIOUS OR CONTEMPORANEOUS STATEMENTS, AGREEMENTS, AND REPRESENTATIONS WITH RESPECT TO TERMS AND CONDITIONS." (Rec. Doc. 15-3, at 8.) Accordingly, by looking at the parties' contracts, it appears that the parties did not agree to a forum selection clause in the sales of equipment after January 1, 2014. Thus, the forum selection clause in the credit application agreement and allegedly in the May 7 invoice can apply only to Axis's claims related to air compressors purchased before January 1, 2014.[4]

Having found that a mandatory forum selection clause applies to some of Axis's claims, the Court must now determine whether the clause is enforceable. Under *Atlantic Marine*, a district court should ordinarily transfer the case to the forum specified, unless extraordinary circumstances unrelated to the convenience of the parties warrant denial of a transfer. 134 S. Ct. at 581. When determining whether extraordinary circumstances exist, the district court may only consider the public interest factors of the traditional § 1404(a) analysis. *Id.* at 582. Courts also consider judicial economy as an additional public interest factor. That is, "whether a transfer would avoid

---

[4] According to Defendants, Axis purchased only five air compressors in 2013. (Rec. Doc. 15-1, at 2 n.2.) The other thirty-six were purchased in 2014, after the forum selection clause was omitted from the terms and conditions of sale. *Id.* However, Axis alleges in its complaint that all forty-one air compressors were purchased in 2014. (Rec. Doc. 1-1, at 3.)

duplicative litigation and prevent waste of time and money."
*Allen v. Ergon Marine & Indus. Supply, Inc.*, No. 08-4184, 2008
WL 4809476, at *2 (E.D. La. Oct. 31, 2008) (citing *Van Dusen v.
Barrack*, 376 U.S. 612, 616 (1964)). Although such cases are not
common, district courts have refused to transfer a case
notwithstanding the counterweight of a forum selection clause.
*See, e.g., Bollinger Shipyards Lockport, L.L.C. v. Huntington
Ingalls Inc.*, No. 08-4578, 2015 WL 65298, at *4 (E.D. La. Jan.
5, 2015) (finding the public interest in judicial economy
weighed heavily in favor of denying motion to transfer where
case had been pending in the district for six years and the
court had made substantive rulings).

Here, the Court finds that the public interest factors
warrant denial of a transfer. First, there is no evidence that
the first factor, administrative difficulties flowing from court
congestion, is a consideration in this Court or in the District
of Colorado. Therefore, this factor is neutral. Second, this
case does not involve a controversy raising localized concerns,
as the events relating to the suit happened in multiple states.[5]
Thus, this factor is neutral. Third, the familiarity of the
forum with the law that will govern the case tends to lean in
favor of transfer because the terms and conditions of sale in

---

[5] It is unclear what events, if any, happened in Colorado. Defendants simply
state, "Colorado also has a relationship to the dispute in that it is where
MREC's headquarters is located." (Rec. Doc. 15-1, at 8.)

the credit application agreement provide that they are governed by Colorado law. However, this is essentially a contract dispute, and this Court is equally as capable of applying another state's contract law. Moreover, a majority of Axis's claims are not subject to the choice-of-law provision in the credit application. Therefore, this factor is neutral. Fourth, maintenance of the suit in either forum will not create problems with conflicts of law or in the application of foreign law. Thus, this factor is neutral.

This is an unusual case, in that only a portion of the plaintiff's claims are subject to a forum selection clause. Defendants ask the Court to sever Axis's claims that fall within the forum selection clause pursuant to Rule 21 so that they may be transferred. While *Atlantic Marine* noted that public factors, standing alone, were unlikely to defeat a transfer motion, the Supreme Court has also noted that § 1404 was designed to minimize the waste of judicial resources of parallel litigation of a dispute. *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). "The tension between these centrifugal considerations suggests that the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause." *Id.* The Fifth Circuit has concluded that *Atlantic*

15

*Marine* does not categorically require severance and transfer in all situation. *Id.* at 681. When considering a severance-and-transfer motion pursuant to Rule 21, a court must ask whether the preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit. *Id.* Accordingly, a court "should not sever if . . . partial transfer would require the same issue to be litigated in two cases." *Id.* at 680.

Although the first four factors are neutral, the judicial economy considerations of having all claims determined in a single lawsuit weighs heavily in favor of denying severance and transfer. Axis's claims related to five air compressors purchased in 2013 are the exact same as its claims related to the other thirty-six purchased in 2014. Therefore, severance and transfer would require the same issues to be litigated between the same parties in two cases. Upon weighing the public interest factors against the considerable weight of the forum selection clause, the Court finds there are extraordinary circumstances in this case unrelated to the convenience of the parties that justify denial of the motion to transfer.

<u>**CONCLUSION**</u>

Accordingly,

16

**IT IS HEREBY ORDERED** that Defendants' *Motion to Transfer Pursuant to 28 U.S.C. § 1404 or Alternatively Motion to Dismiss for Forum Non Convieniens* [sic] **(Rec. Doc. 15)** is **DENIED.**

New Orleans, Louisiana this 30th day of September, 2015.


_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE