UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AXIS OILFIELD RENTAL, LLC | * | CIVIL ACTION NO.: 15-cv-1627 |
| | * | |
| Versus | * | JUDGE: BARBIER |
| | * | |
| MINING, ROCK EXCAVATION AND CONSTRUCTION, LLC, ET AL | * | MAG. JUDGE: ROBY |

* * * * * * * *

**REPLY MEMORANDUM OF MREC AND ACC IN SUPPORT OF
MREC's MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MOTION FOR DECLARATORY JUDGMENT
and
ACC'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR
DECLARATORY JUDGMENT (Doc. 31)**

**MAY IT PLEASE THE COURT:**

Defendants Mining, Rock Excavation and Construction LLC (formerly known as Atlas Copco Construction Mining Technique USA LLC), individually and on behalf of its division Chicago Pneumatic Construction Equipment) ("MREC") and Atlas Copco Compressors LLC ("ACC") (collectively "Defendants") file this reply memorandum in support if their motions for summary judgment, partial summary judgment and declaratory judgment. (Doc. 31)

**I. The Terms and Conditions of Sale Are Part of the Agreement Between The Parties**

Axis initially urges this Court to find that the Terms and Conditions of Sale are not applicable to the transactions at issue. This argument is a re-hash of the arguments Axis made in opposition to defendants' motion regarding the forum selection clause which were rejected by

1

this Court[1]. (Doc. 24) There is no legal distinction between this Court's threshold analysis as to whether a binding contract existed between the parties for the purposes of applying the forum selection clause versus making that same determination for the purposes of applying a choice of law provision. This Court has already correctly determined that the Terms and Conditions of Sale agreed to by Axis in the credit application are binding on all sales made between Axis and MREC, and therefore constitutes law of the case[2].

## A. Axis Expressly Agreed to the Terms and Conditions of Sale

Axis now argues that the credit application agreement merely constituted an "offer" that was not accepted by Axis. (Doc. 36, p. 6) This ignores the fact that Axis' president Ed Davis signed, and accepted, the terms of the credit application agreement including the provision that Axis agreed to be "legally bound hereby, herein agrees and will comply with Atlas Copco CMT USA LLC's[3] Terms and Conditions of Sale located on page three (3) of this application." Doc. 31-4, Exhibit "B." Axis signed the credit application agreement in order to establish a trade

---

[1] This Court's decision regarding the forum selection clause is predicated on the existence of a valid and enforceable agreement between MREC and Axis. (Doc. 24 at p. 13 ("Having found that a mandatory forum selection clause applies to some of Axis's claims. . .")) Had this Court found that no such agreement existed, it would have been unnecessary to invoke the "extraordinary circumstances" exception set forth in *Atlantic Marine* since there would be no forum selection agreement between the parties.

[2] *Durham, Inc. v. Vanguard Bank & Trust Co.*, No. CIV. A. 94-650, 1994 WL 715626, at *2 (E.D. La. Dec. 21, 1994) ("Generally, "when a court decides upon a rule of law that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 814 (1988). This principle applies equally to the court's own decisions and to the decisions of a coordinate court. *Id.* It is especially applicable to a transfer decision because of the threat of sending the 'litigants into a vicious cycle of litigation.' *Id.* at 816. However, a court has the power to revisit prior decisions although it "should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " *Id.* (quoting *Arizona v. California,* 460 U.S. 605, 618 (1982))" ); *see also* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (2d ed. 2002) ("A trial court could not operate if it were to yield to every request to reconsider each of the multitude of rulings that may be made between filing and final judgment. All too often, requests would be made for no purpose but delay and harassment.... Even the sincere desire to urge again a strong position that perhaps deserves to prevail could generate more work than our courts can or should handle. A presumption against reconsideration makes sense.").

[3] MREC's former name was Atlas Copco Construction Mining Technique USA LLC.

account with MREC. MREC approved the application and extended credit to Axis allowing net payment within 30 days of receipt of invoice. (Doc. 31-5, Exhibit "C", Minch Affidavit at ¶5) Pursuant to this August 7, 2012 agreement Axis began ordering equipment and parts from MREC beginning on October 19, 2012 wherein Axis ordered five light towers. (Docs. 31-5 to 31-7, Exhibit "C.") Axis continued to order equipment and parts from MREC and placed numerous orders with MREC which resulting in Axis receiving "over one hundred invoices" from MREC between October 2012 to December 2013. (Docs. 31-5 to 31-7, Exhibit "C" at ¶8)

It is immaterial whether credit extended by MREC was used to purchase the equipment at issue. This Court must apply the unambiguous terms of the contract as written[4]. There is no language limiting application of the agreement to sales made on credit provided by MREC, nor is there language excluding application of the agreement to "future transactions between the parties." To the contrary, the Terms and Conditions of Sale agreed to by Axis in the credit application agreement provide that "[t]hese terms and conditions of sale will govern the sale by Atlas Copco[5] of all Products." (Doc. 31-4, Exhibit "B.") Axis specifically agreed to be bound by the "Terms of Conditions of Sale" when it signed the credit application agreement, and that agreement applied to "the sale by Atlas Copco of all products," continued throughout the business relationship between Axis and Defendants[6], and is applicable to the sales at issue in this action. The interpretation advanced by Axis is pure argument unhinged from the actual text of

---

[4] This fundamental principal of contracts is recognized by the law of Louisiana (forum), Colorado (choice of law in contract) and federal common law (generally applied to forum selection clauses). *Smart v. Gillette Co. Long Term Disability Plan*, 70 F. 3d 173 (1st Cir. 1995) (federal common law) ("contracts containing unambiguous language must be construed according to their plain and natural meaning"); *Gebreyesus v. F.C. Schaffer & Associates, Inc.*, 204 F. 3d 639, 643 (5th Cir. 2000) (Louisiana law) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *SolidFX, LLC v. Jeppesen Sanderson, Inc.*, 935 F. Supp. 2d 1069, 1085-86 (Colorado law) ("When a contractual term unambiguously resolves the parties' dispute the interpreting court's task is over because in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence.")

[5] "Atlas Copco" is defined by the agreement as meaning "Atlas Copco Construction Mining Technique USA LLC"

[6] Axis is still extended credit in the form of 30 days net payment on all orders to this day. Minch affidavit, Doc. 31-5, Exhibit "C" at ¶5.

the agreements between Axis and Defendants. *See*, *T&M Solar and Air Conditioning, Inc. v. Lennox International, Inc.* 83 F. Supp. 3d 855, 869-70 (N.D. Cal. 2015) ("any terms actually agreed to in connection with the credit application would apply to the claims in the FAC [First Amended Complaint]")

### B. The Choice of Law Provision is Part of the Parties' Agreement

Axis next argues that the choice of law provision in the amended Terms and Conditions of Sale were not part of the agreement between the parties since Axis alleges that it did not receive the invoices with the Terms and Conditions on the reverse until after Axis paid for the compressors at issue[7]. Axis' argument ignores the fact that it expressly agreed to the Terms and Conditions of Sale when it signed the credit application agreement in which they agreed to "legally bound hereby, herein agrees and will comply with Atlas Copco CMT USA LLC's[8] Terms and Conditions of Sale located on page three (3) of this application." As set forth above, the Terms and Conditions of Sale expressly agreed to by Axis extend to "govern the sale by Atlas Copco[9] of all Products." (Doc. 31-4, Exhibit "B.")

Axis received over one hundred invoices from MREC. (Doc. 31-5, Exhibit "C" at ¶8) Each one of these invoices contained a statement in all capital letters specifically incorporating the Terms and Conditions into each invoice. (Doc. 31-5 to 31-7, Exhibit "C" ("THE ADDITIONAL TERMS AND CONDITIONS ON THE NEXT PAGE OF THIS INVOICE ARE MADE PART OF THIS INVOICE")). Each one of these invoices had the applicable Terms and Conditions on the reverse side. The original and amended Terms and Conditions of Sale were

---

[7] Axis admits that it " received the reverse sides of the invoices after receiving the front page of the invoices." (Doc. 36-2, ¶12)
[8] MREC's former name was Atlas Copco Construction Mining Technique USA LLC.
[9] "Atlas Copco" is defined by the agreement as meaning "Atlas Copco Construction Mining Technique USA LLC"

actually received by Axis[10] as evidenced by the fact that they produced copies of invoices with both the original and amended Terms and Conditions of Sale attached. (Doc. 31-4, Exhibit "J") At no time did Axis ever object or otherwise reject the original or amended Terms and Conditions of Sale. Although Ed Davis' signature on the credit application agreement is sufficient alone to enforce the Terms and Conditions of Sale against Axis, the Terms and Conditions of Sale are also part of the bargain pursuant to the conduct of the parties and memoranda between the parties[11].

### C. Axis Still Bound By Original Terms and Conditions

If it is Axis' position now that it is not bound by the amended Terms and Conditions of Sale in connection with the sale of the air compressors at issue because it was not part of the bargain between the parties, it would still be bound by the original Terms and Conditions of Sale which it expressly agreed to by signing the credit application agreement. The original Terms and Conditions of Sale were provided to Axis prior to the sale of the air compressors at issue, "govern the sale by Atlas Copco of all Products", and are therefore applicable to these sales if the amended Terms and Conditions of Sale were not made part of the parties' bargain.

If the original Terms and Condition of Sale are applicable to the sales of these compressors, then the choice of law, forum selection provision, disclaimers of warranty, and limitation of liability contained in that agreement would govern the sale of these compressors. Therefore, the applicable choice of law provision in the original Terms and Conditions of Sale

---

[10] The documents attached as Exhibit J were received from Axis and bear an Axis bates numbers.

[11] Even if Axis had not expressly agreed to the forum selection clause, which it did, it is bound by the clause pursuant to Colo. Rev. Stat. § 4-2-207 and/or Tex. Bus. & Com. Code Ann. § 2.207 since the language in the invoices constitutes as a formal memoranda between merchants which became part of the contract between the parties. *Avedon Engineering, Inc. v. Seatex*, 112 F. Supp. 1090 (D. Colo. 2000) The same result would occur when applying Texas or Louisiana law. See, Louisiana law, the course of dealings between the parties, including receiving Terms and Conditions with other purchases, and the lack of objection to those Terms and Conditions by Axis, results in agreement to those provisions. *Shelter Mut. Ins. Co. v. Rimkus Consulting Group of La.*, 148 So. 2d 871 (La. 2014) (terms and conditions attached to confirmation letter retaining expert became part of contract between expert and insurer).

states that "these Terms and Conditions are governed exclusively by the laws of the State of Colorado without regard to its conflicts of laws principles that would have a contrary result." Therefore, under the original Terms and Conditions of Sale, this action would be governed by Colorado law. If this Court finds that the amended Terms and Conditions of Sale did not become part of the parties' bargain, then the original Terms and Conditions must be applied which mandate application of Colorado law.

### III. Choice of Law Provision Provides for Colorado Law

Finally, the amended Terms and Conditions of Sale unambiguously provide for application of the law of the State where MREC's "applicable sales or service facility" is located. (Doc. 31-8, Exhibit "D.") The amended Terms and Conditions of Sale apply both to sales of products as well as maintenance services. (Doc. 31-8, Exhibit "D", ¶9 (Warranty disclaimers provided for sales and service)) When the choice of law provision is read in context with the agreement as a whole[12], claims such as the instant claim arising out of the sale of an allegedly defective product are governed by the law of the state where the facility that made the sale is located. Had this been a claim for improper service, which is not alleged in this action, then the law of the state where the service facility was located would provide the substantive law.

When read as a whole the Terms and Condition for Sale require the law where MREC's sales facility is located to be applied to this action. In this case the undisputed evidence is that these sales were made out of MREC's facility in Commerce City, Colorado as evidenced by the

---

[12] *See*, *In Re: Lijeberg Enterprises, Inc.*, 304 F. 3d 410, 443 (5th Cir. 2002) ("Every provision of the contract must be interpreted in light of the contract's other provisions in order to give each provision the meaning suggested by the contract as a whole") (Louisiana law); *Tittle v. Enron Corp.*, 463 F. 3d 410, 419 (No single provision taken alone will be given controlling effect; rather, all provision must be considered with reference to the whole instrument) (Texas Law); *Stroh Ranch Development, LLC v. Cherry Creek South Metrop. Dist. No. 2*, 935 F. Supp. 2d 1052 (D. Colo. 2013) (Courts must examine the contract as a whole and attempt to determine intent by reference to all of the contracts terms and provisions.) (Colorado law)

affidavit of Jason Ammon (Doc. 31-11, Exhibit G, ¶3) and each invoice for the compressors at issue lists MREC's address as being located in Commerce City, Colorado[13]. (Doc. 31-9, Exhibit "E.") Plaintiffs were aware of the location of MREC's sales offices upon their receipt of over a hundred invoices stating that MREC is located in Commerce City, Colorado. Colorado law should be applied to this case based on the unambiguous terms of the Terms and Conditions of Sale[14].

### IV. Article 3542 Is Not Applicable To Redhibition Claims

Axis argues that in the absence of a contractual choice of law provision this Court should apply the Louisiana choice of law provisions applicable to tort claims to determine what law applies to Axis' redhibition claims. Axis relies on the district court decision in *Datamatic, Inc. v. International Business Machines Corp.*, 613 F. Supp. 715, 718 (W.D. La. 1985) for this proposition. The Fifth Circuit Court of Appeals, in reviewing the district court's decision in *Datamatic* expressly declined to "wrestle with [the] choice-of-law question" of whether redhibition claims are examined under the tort or contract provisions of Louisiana's conflict of law articles. *Datamatic, Inc. v. International Business Machines Corp.*, 795 F. 2d 458, 461 (5th Cir. 1986). In so declining to decide the issue, the Court noted the fact that the Louisiana Supreme Court has treated redhibition claims as a form of implied warranty, and specifically held that "the action in redhibition is inherently contract-based[15]." Since *Datatronic* this Court

---

[13] Each invoice after 1/1/2014 has the following text: [Chicago Pneumatic Construction Equipment / A business unit within: / Mining, Rock Excavation and Construction LLC / 3700 E. 68th Avenue / Commerce City, CO 80022 / www.cp.com] Similar text was provided on each invoice prior to 1/1/2014, although the name of the company listed was Atlas Copco Construction Mining Technique USA LLC, the former name of MREC. *See*, Docs, 31-5 to 31-7, Exhibit "C."

[14] There is no basis for Axis' reading that the state law where the authorized service facility closest to the buyer is located controls. The provision provides for the state of the "Seller's" applicable sales or service facility. As set forth in Doc. 31-11, ¶5, Exhibit "G" MREC does not own any repair facilities in Louisiana.

[15] *Id.* at n. 2, 462.

7

has held that where the claim for damage is to the product itself or economic loss associated with such damage, that the choice of law provisions set forth in article 3537 applicable to conventional obligations must be applied. *R Square Investments, Inc.*, *et al* vs. *Teledyne Industries, Inc., et al*, 1997 WL 436245 (E.D. La. 7/31/1997); *Skansi Marine, LLC vs. Ameron International Corporation,* 2003 WL 22852221 (E.D. La. 12/1/2003). In both *R Square* and *Skansi* plaintiffs were seeking damages, in part, under the theory of redhibition.

## V. Louisiana Law Does Not Apply to These Claims

As set forth in defendants' original motion in support, in the absence of a contractual choice of law provision, application of Article 3537 results in a finding that a law other than the law of the State of Louisiana applies to these claims. This Court in *R Square* held that "in each case where a court has applied Louisiana's law of redhibition to foreign sellers, the seller either sold the product through a franchised dealership in the state or sold the product with knowledge that it would be used in Louisiana." *R Square* at 4. In the case cited for the proposition that redhibition could be applied where the seller had knowledge it would be used in Louisiana, the contact actually stated that the equipment sold would be installed and used in Louisiana. *See*, *Gulf State Util. v. NEI Peebles Elec. Prods.*, 819 F. Supp. 538, 552 (M.D. La. 1993). The *R Square* Court held that Minnesota law should be applied to the claims even where the purchaser was a Louisiana Corporation and the product, an aircraft engine, was installed in an airplane owned by the Louisiana company which was housed, registered, licensed and taxed in Louisiana. *Id.*

In the instant case, the air compressors were delivered from MREC directly to Axis' facility in Pearsall, Texas. Pearsall is located outside San Antonio, Texas, at least 350 miles from the Louisiana – Texas border. There is no factual or contractual basis to conclude that

MREC or ACC had any knowledge that the any of these compressors would be used in Louisiana[16]. In this purely commercial, multistate transaction, and given the factual contacts each state has to the transaction at issue, as set forth in the original memorandum in support, the consumer protection policy behind redhibition is outweighed by the interests of either Colorado or Texas, which by adoption of Article 2 of the Uniform Commercial Code, have demonstrated a strong interest in facilitating the flow of interstate commerce in and out of its boarders. *See, R Square* at 4.

## VI. Negligent Misrepresentation Claim Not Subject of Motion

MREC has not moved for summary judgment on Axis' negligent misrepresentation claim at this time. Therefore it is unnecessary for this Court to determine which state's law applies to Axis' claim, although it is MREC's position that the contractual choice of law provisions agreed to by Axis under either the original or amended Terms and Conditions of Sale would provide that the law of Colorado would be applied to the negligent misrepresentation claim.

The amended Terms and Condition of Sale provides that the contractual choice of law applies to "the validity, performance, and all other matters arising out of or relating to the interpretation and effect of these Terms and/or the contract." The choice of law provision is broadly worded to apply to claims that "arise out of" or "relate" to the Terms and conditions. In the instant case the negligent misrepresentation claim not only "relates" to the Terms and Conditions, but is directly limited by the Terms and Conditions themselves, which expressly limit liability for tort actions (*See* ¶15) and exclude consequential damages arising from tort

---

[16] Plaintiffs now claim that "some of the pertinent air compressors were utilized in Louisiana." (Doc. 36 at p. 10) The actual documents produced by Axis show that they were used in the State of Texas. *See*, Exhibit "I" to Doc. 31. Even if one or more of the compressors made the 350 mile journey to the Louisiana border, this fact is immaterial to the question of whether ACC or MREC had actual knowledge that they would be used in Louisiana.

claims[17]. (*See*, ¶16)  Although not at issue in this motion, the choice of law provision in the Terms and Conditions of Sale are broadly worded to include Axis' negligent misrepresentation claim.  Since this claim is not the subject of the instant motion, this issue does not need to be decided at this time.

### VII.  Declaratory Judgment Is Appropriate

Finally plaintiffs argue that this Court should not enter a declaratory judgment on the contractual limitations of liability on the basis that the request is pre-mature.  In support of this proposition Axis cites the *Hollybrook* case in which the manufacturer of cotton ginning equipment was sued by a processor as a result of allegedly defective equipment provided by the manufacturer to the processor.  *Hollybrook Cottenseed Processing, LLC v. Carver, Inc.*, 2010 WL 1416781 (4/1/2010).  In *Hollybrook* the agreement between the parties limited the manufacturer's damages to the price of the equipment purchased, although there was a disagreement as to what equipment was at issue in the case, and therefore the Court concluded that the amount that liability could be limited to could not be determined without additional facts. *Id.* at 10.

In the instant case there is no dispute as to material fact as to the purchase price for each of the compressors at issue.  The first set of 27 compressors were purchased for $11,921.25 each, the next fourteen were purchased for $12,400.00 each.  Invoices for each of these compressors are attached as Exhibit "E" and "F".  It is merely necessary to engage in simple addition to determine the maximum damages that could be recovered for each defective compressor.  There is no need for additional discovery to determine this issue.  There is no dispute as to the price paid for the compressors at issue, and therefore a declaratory judgment limiting plaintiffs'

---

[17] *See, ¶11 of* original Terms and Conditions.

maximum damages to the actual price paid is appropriate in accordance with the Terms and Conditions of Sale.

## VIII. Conclusion

Axis agreed to the amended Terms and Conditions of Sale, including the choice of law provisions, limitations of liability and disclaimers of warranty. Axis' opposition merely re-asserts the position, that this Court already rejected in deciding Defendant's venue motion, that the Terms and Conditions of Sale are not applicable to these claims. Axis makes no argument why the disclaimers of warranty should not be applied, and make no argument other than suggesting prematurity why the limitation of liability should not be applied to this claim. For the reasons set forth in defendant's original motion and memorandum in support, the exhibits attached thereto, and this reply memorandum, defendants' motions should be granted.

Respectfully Submitted,

**PUGH, ACCARDO, HAAS,
RADECKER & CAREY, L.L.C.**


   */s/ Douglas R. Elliott*
LAWRENCE G. PUGH, III #17351
DOUGLAS R. ELLIOTT #24402
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163-1132
Telephone: (504) 799-4500
Facsimile: (504-799-4520
*Attorneys for Mining, Rock Excavation and
Construction LLC and Atlas Copco
Compressors, LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was served on all counsel by CM/ECF on the date electronically stamped on this document.

                                        */s/ Douglas R. Elliott*
                                        **DOUGLAS R. ELLIOTT**