UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AXIS OILFIELD RENTALS,                    CIVIL ACTION
LLC

VERSUS                                    NO: 15-1627

MINING, ROCK, EXCAVATION                  SECTION: "J"(4)
AND CONSTRUCTION, LLC,
ET AL.

## ORDER & REASONS

Before the Court is *MREC's Motion for Partial Summary Judgment and Motion for Declaratory Judgment and ACC's Motion for Summary Judgment and Motion for Declaratory Judgment* **(Rec. Doc. 31)** filed by Mining, Rock, Excavation and Construction LLC (formerly known as Atlas Copco Construction Mining Technique USA LLC), individually and on behalf of its business unit Chicago Pneumatic Construction Equipment, ("MREC") and Atlas Copco Compressors LLC ("ACC") (collectively "Defendants"); an opposition thereto (Rec. Doc. 36) filed by Plaintiff, Axis Oilfield Rental, LLC ("Axis"); Defendants' reply (Rec. Doc. 44); and Plaintiff's surreply (Rec. Doc. 46). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED IN PART and DENIED IN PART** for the reasons set forth more fully below.

## FACTS AND PROCEDURAL BACKGROUND

Axis commenced this litigation in state court on March 25, 2015, seeking damages allegedly sustained in connection with its purchase of forty-one air compressors manufactured by ACC and allegedly sold by MREC in 2014.[1] (Rec. Doc. 1-1, at 3-4.) According to Axis's complaint, the air compressors began to experience mechanical problems within months of being put into service. *Id.* at 4. Axis alleges causes of action against ACC and MREC for redhibition under Louisiana law, and asserts additional causes of action against MREC for breach of contract and negligent misrepresentation. *Id.* at 4-10. Axis seeks damages in the form of (1) return of the purchase price of the air compressors at issue, with interest from the time it was paid; (2) reimbursement of the reasonable expenses occasioned by the sale; (3) the costs incurred for the preservation of the air compressors; (4) all other damages

---

[1] The facts surrounding the purchase of the air compressors at issue continue to develop throughout the course of this litigation. Axis's complaint alleges that Axis purchased forty-one compressors from MREC in two sales: thirty-four units in March 2014 and seven units in April 2014. (Rec. Doc. 1-1, at 3.) Defendants have provided evidence to the contrary, but they have changed positions since their previous motion to transfer venue. Previously Defendants admitted that all forty-one air compressors were sold by MREC. According to Defendants, five of the air compressors at issue were sold to Axis by MREC in May 2013, and the rest were sold in 2014. (Rec. Doc. 15-1, at 2 n.2.) Now Defendants claim that only thirty-six of the air compressors at issue were sold by MREC. (Rec. Doc. 31-1, at 3.) According to Defendants, the thirty-six air compressors sold by MREC were purchased in three separate sales: twenty-seven units in March 2014, seven units in April 2014, and two units in July 2014. *Id.* (citing Rec. Doc. 31-9). Defendants assert that the remaining five air compressors at issue were purchased from Big Eight Supply & Tool—not MREC—on May 16, 2014. *Id.* (citing Rec. Doc. 31-10). Axis has provided no evidence in dispute.

associated with the air compressors' mechanical problems; and (5) attorney's fees. *Id.*

On August 7, 2012, Axis submitted a "Credit Application" with MREC. (Rec. Doc. 31-4.) The Credit Application, signed by Axis's president, stated that Axis, "intending to be legally bound hereby, herein agrees and will comply with [the] Terms and Conditions of sale, located on page three (3) of this application." *Id.* at 2. The "Terms and Conditions of Sale" ("original Terms") on page three of the Credit Application included the following choice-of-law provision: "**(d) Governing Law:** These terms and conditions are governed exclusively by the laws of the State of Colorado without regard to its conflict of laws principles that would have a contrary result." *Id.* at 3. The Terms and Conditions of Sale in the Credit Application also included a limitation-of-liability provision, a provision excluding consequential damages, and warranty disclaimers. *Id.*

On January 1, 2014, the original Terms were amended. (Rec. Doc. 31-8.) Paragraph 17 of the amended Terms and Conditions of Sale ("amended Terms") contains the following choice-of-law provision:

> **17. Miscellaneous.** . . . 17.8. The validity, performance, and all other matters arising out of or relating to the interpretation and effect of these Terms and/or the contract shall be governed by and construed in accordance with the internal laws of the U.S. State in which Seller's applicable sales or service facility is located without giving effect to any choice or

> conflict of law provision or rule . . . that would cause the application of the laws of any jurisdiction other than those of such State.

*Id.* Similar to the original Terms, the amended Terms include a limitation-of-liability provision, a provision excluding consequential damages, and warranty disclaimers. *Id.*

Defendants claim that the amended Terms were attached to the invoices Axis received for its purchase of air compressors from MREC.[2] (Rec. Doc. 31-1, at 2.) However, Axis claims that it initially received the invoices through electronic mail and the invoices it received electronically included only the front side of the invoices—not the reverse side, which Defendants claim included the Terms and Conditions of Sale. (Rec. Docs. 36, at 2.) According to Axis, its president signed the invoices, returned the signed invoiced though electronic mail, and directed JPMorgan Chase Bank to pay Defendants on behalf of Axis. *See id.* Axis claims Defendants then shipped the air compressors to Axis and mailed hard-copy invoices to Axis's headquarters. *Id.* These hard-copy invoices included the reverse side with the Terms and Conditions of Sale. *Id.*

Defendants filed the instant *MREC's Motion for Partial Summary Judgment and Motion for Declaratory Judgment and ACC's Motion for Summary Judgment and Motion for Declaratory Judgment*

---

[2] Defendants assert that the invoices for Axis's purchase of air compressors from MREC were printed on paper that was preprinted with the applicable Terms and Conditions of Sale on the reverse side. (Rec. Doc. 31-5, at 3.)

**(Rec. Doc. 31)** on December 24, 2015. In their motion, Defendants move for (1) summary judgment as to the Louisiana redhibition claims on the grounds that such claims are not recognized by the law applicable to this action; (2) summary judgment as to the breach of contract claims on the grounds that such claims are barred by the amended Terms and Conditions of Sale agreed to by the parties; and (3) declaratory judgment that Axis's total recovery, if any, is limited to the price paid for the compressors at issue.[3] Axis filed its opposition on January 19, 2016. The Court granted leave for Defendants to file their reply and for Axis to file its surreply on January 28, 2016. The Court now considers the motion on the briefs.

<u>**LEGAL STANDARD**</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in

---

[3] Defendants have not moved for summary judgment on Axis's negligent misrepresentation claims and have clarified that Axis's negligent misrepresentation claims are not subject to the instant motion. (Rec. Doc. 44, at 9.)

the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden

then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.* at 325; *Little*, 37 F.3d at 1075

<u>**PARTIES' ARGUMENTS AND DISCUSSION**</u>

**A.   Whether the Terms and Conditions of Sale Are Part of an Agreement Between the Parties**

A district court applies the choice-of-law rules of the state in which it sits in a diversity case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Under Louisiana law, contractual choice-of-law provisions are presumed valid unless the chosen law contravenes the public policy of the state whose law would otherwise apply. La. Civ. Code art. 3540. A choice-of-law provision in a contract is presumed valid; the party seeking to prove such a provision invalid bears the burden of proof. *Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir. 2012). However, "'preliminary' issues that pertain to the existence of the choice of law clause, such as consent and vices of consent, . . . should be judged according to the law applicable under Article 3537." La. Civ. Code art. 3540, cmt. (d). Here, Defendants argue that the Court should rely on the choice-of-law provision in the amended Terms and Conditions of Sale and apply

Colorado law to Axis's claims. The threshold question, however, is whether the provisions contained in the amended Terms are part of the contract between the parties.

Louisiana's generally applicable choice-of-law rule specifies that "an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[4] La. Civ. Code art. 3515. Specifically regarding contracts, article 3537 instructs courts to determine which state's law applies by evaluating the strength and pertinence of the relevant policies of the involved states in the light of the following considerations:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

La. Civ. Code art. 3537.

In the instant case, the parties point to three states with a connection to this action. Defendants argue that both Colorado

---

[4] Under article 3515, the state whose policies would be most seriously impaired if its law were not applied is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of (1) the relationship of each state to the parties and the dispute and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state. La. Civ. Code art. 3515.

and Texas have significant contacts with the transactions at issue. (Rec. Doc. 31-1, at 6.) According to Defendants, the air compressors were sold from MREC's sales facility in Colorado, the sales were "booked" at MREC's headquarters in Colorado, the compressors were shipped to Axis's facility in Texas, the compressors were used by Axis in Texas, the compressors are and have been physically located in Texas, and the alleged defects arose from Axis's use of the compressors in Texas. *Id.* at 6-7. On the other hand, Axis argues that Louisiana has the most significant connection to the transactions at issue. According to Axis, this matter involves determinations of loss to a Louisiana entity caused as a result of a contract accepted, executed, and finalized in Louisiana. (Rec. Doc. 36, at 9.) Further, Axis argues that some of the pertinent air compressors were utilized in Louisiana. *Id.* at 10. Moreover, Axis asserts that Defendants are domiciled in New Jersey and Delaware; no Colorado or Texas entities are involved and no persons have been injured in Colorado or Texas. *Id.* at 9. Therefore, Axis argues that no public policy concerns of Colorado or Texas to apply their substantive laws exist in this case. *Id.* at 9.

As to the preliminary issue pertaining to the existence of the choice-of-law clause, the parties have not demonstrated that a conflict of laws exists. Accordingly, the Court applies Louisiana law to determine whether the parties formed a valid contract that

included the amended Terms; however, the Court would reach the same conclusion under Colorado or Texas law.

Under Louisiana law, the perfection of a sale requires a thing, a price, and the consent of the parties. La. Civ. Code art. 2439. Consent necessary to form a contract is established "through offer and acceptance." *Id.* art. 1927. For a proposal to qualify as an offer, "it must reflect the intent of the author to give to the other party the right of concluding the contract by assent." *Delta Testing & Inspection, Inc. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 699 So. 2d 122, 124 (La. App. 4 Cir. 1997). "[A] price list sent upon request to a customer constitutes an offer and the contract of sale is completed when the customer accepts the offer by placing an order for goods in accordance with the price list." *Gulf S. Mach., Inc. v. Kearney & Trecker Corp.*, 756 F.2d 377, 380 (5th Cir. 1985). Accordingly, the invoices sent to Axis, which described the things to be sold and the prices, were offers; Axis accepted the offers by signing the invoices and making payment, forming contracts of sale upon the conditions mentioned in the invoices. *See id.*

The next issue is whether the amended Terms were a part of the contracts between the parties. "Importantly, consent envisions agreement on *all* elements of a given sale or contract." *Marseilles Homeowners Condo. Ass'n, Inc. v. Broadmoor, L.L.C.*, 111 So. 3d 1099, 1111 (La. App. 4 Cir. 2013). Here, Defendants contend that

the amended Terms were a part of their contracts with Axis because each invoice received by Axis from MREC contained the following language in all capital letters: "THE ADDITIONAL TERMS AND CONDITIONS ON THE NEXT PAGE OF THIS INVOICE ARE MADE PART OF THIS INVOICE." (Rec. Doc. 31-1, at 2-5.) Moreover, Defendants claim that both the original and amended Terms and Conditions of Sale were actually received by Axis throughout the parties' course of dealing, as evidenced by the fact that Axis produced copies of signed invoices with the Terms attached. *Id.* at 2 n.2 (citing Rec. Doc. 31-14).

Axis contends that it did not consent to the choice-of-law provision in the amended Terms. (Rec. Doc. 36, at 6.) Axis states that it requested from Defendants the price for a certain amount of air compressors prior to each sale. *Id.* at 2. Axis argues that Defendants provided an offer to Axis through invoices sent through electronic mail, which described the air compressors and included a price. *Id.* Further, Axis argues that it subsequently provided its acceptance and consent to the sale by signing the invoices and directing its bank to pay Defendants on its behalf. *Id.* Notably, Axis claims that the invoices sent by Defendants through electronic mail and subsequently signed by Axis's president included only the front page. *Id.* According to Axis, Defendants did not send the reverse page containing the amended Terms to Axis through electronic mail. *Id.*

11

As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto. *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 289 (5th Cir. 2012); *AWC, Inc. v. CSF Const., Inc.*, 931 So. 2d 382, 386 (La. App. 4 Cir. 2006). In addition, reference on the face of a document to conditions to be found on the reverse is accepted practice and is sufficient to put a party on notice that the author of the document intends to incorporate terms and conditions into the document in addition to those shown on its face. *AWC, Inc.*, 931 So. 2d at 387. For example, in *AWC, Inc. v. CSF Construction, Inc.*, a buyer and seller disputed which of them bore the burden of paying sales tax on two purchase orders. *Id.* at 383. In the purchase agreement, which was prepared by the buyer, the reverse side of the contract contained a provision indicating that the seller was to pay sales tax for the transaction. *Id.* at 385. The contract was sent by fax, and the seller contended that the buyer faxed only the front page of the purchase orders, not the reverse page containing the provision requiring the seller to pay sales tax. *Id.* The face of the purchase orders there, similar to the Defendants' invoices in this case, provided the following language in all capital letters: "THIS PURCHASE ORDER SUBJECT TO TERMS AND CONDITIONS ON REVERSE." *Id.*

The court in *AWC, Inc.* held that the seller's receipt of the fax of the front page of the purchase order, which referred to the

terms and conditions on the reverse, was "sufficient to put [the seller] on notice that [the buyer] intended to incorporate terms and conditions into the Purchase Order in addition to those shown on the face of the document." *Id.* at 387. "It then became incumbent upon [the seller] to inquire further as to the nature of those terms and conditions." *Id.* Furthermore, the concurring opinion in *AWC, Inc.* explains that there was evidence in the record to establish that the seller actually received the terms contained on the reverse of the purchase order. *Id.* (Belsome, J., concurring).

In the instant case, the invoices make reference to terms and conditions to be found on the reverse. The receipt through electronic mail by Axis of the front pages of the invoices, which refer to terms and conditions on the reverse, is sufficient to put Axis on notice that there were reverse pages containing terms and conditions. *See id.* at 386 (majority opinion). Axis does not argue that the choice-of-law provision was not part of the terms and conditions contained on the reverse of the invoices, but only that the reverse pages were not transmitted through electronic mail. However, like the seller in *AWC, Inc.*, Axis should have inquired as to the nature of the terms and conditions referred to on the face of the invoices that it acknowledges having received through electronic mail. *See id.*

In addition, there is undisputed evidence in the record that Axis actually received the original and amended Terms and

Conditions of Sale, both of which contained a choice-of-law provision. During discovery, Axis produced several invoices it received from Defendants that included the terms and conditions on the reverse. (Rec. Doc. 31-14, at 1-20.) The front pages of these invoices were signed by Axis's president and each page, including the terms and conditions, bears an Axis bates number. *Id.* At least one invoice, dated January 21, 2014, contained the amended Terms that Axis claims it never received with the invoices for the air compressors at issue. *See id.* at 13-14. Accordingly, Axis's knowledge of the terms and conditions referred to in the invoices could not be the subject of disagreement among reasonable minds. Therefore, Axis is bound by the amended Terms referred to on the face of the invoices it received from MREC, including the choice-of-law provision.

The choice-of-law provision in Paragraph 17 of the amended Terms provides that all matters arising out of the contract "shall be governed by and construed in accordance with the internal laws of the U.S. State in which the Seller's applicable sales or service facility is located." (Rec. Doc. 31-8.) Axis contends that the choice-of-law provision is ambiguous because the term "applicable sales or service facility" is vague and undefined. (Rec. Doc. 36, at 7.) Axis argues, for example, that the term "applicable sales or service facility" could mean that multiple states' laws could apply if the sales facility and service facility are not located

14

in the same state. *Id.* at 8. Further, Axis claims that one interpretation of applicable "service facility" could be the service facility closes to Axis's principal place of business. *Id.* Axis points out that Defendants have service centers in over 400 locations, including three near New Orleans. *Id.* at 7-8. Defendants contend that because Axis's claims are related to the sale of equipment—not a transaction in which MREC was engaged by Axis to perform service on existing equipment— the choice-of-law provision requires the Court to apply Colorado law, the law of the state where MREC's sales facility is located. (Rec. Doc. 31-1, at 5.)

Axis's argument that the choice-of-law provision is ambiguous lacks merit. The choice-of-law provision must be interpreted in light of the contract's other provisions in order to give each provision the meaning suggested by the contract as a whole. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 443 (5th Cir. 2002) (applying Louisiana law); *accord Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (applying Colorado law); *Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) (applying Texas law). Here, the amended Terms apply to contracts for MREC to sell products and also to contracts for MREC to perform services. (Rec. Doc. 31-8.) For example, Paragraph 9 of the amended Terms states that MREC warrants that certain products sold are free of defects and that services performed by MREC are performed in a workmanlike manner. *Id.* Axis's argument ignores the fact that

the choice-of-law provision refers to the applicable "sales or service facility." *Id.* (emphasis added). Therefore, a sales facility and a service facility cannot both be applicable. The determination of which facility is applicable depends on whether the claim relates to a contract of sale or a contract for service. As Defendants point out, had Axis made a claim for improper service, then the law of the state where the service facility that rendered the service was located would provide the substantive law.

When read together with the other provisions in the amended Terms, the choice-of-law provision requires the Court to apply the law of the state in which the sales facility that sold the air compressors at issue is located. Defendants have provided undisputed evidence that the sales at issue were made out of MREC's sales facility in Colorado. (Rec. Doc. 31-11, at 1.) In addition, each invoice for the compressors at issue listed MREC's address as being located in Commerce City, Colorado. (Rec. Doc. 31-9.) Therefore, the choice-of-law provision unambiguously provides for the application of Colorado law to matters arising out of the sale of the air compressors in this case.

## B.  **Summary Judgment as to Louisiana Redhibition Claims**

Defendants argue that if the Court enforces the choice-of-law provision agreed to by the parties, Axis cannot raise claims of redhibition because such claims are only available under

16

Louisiana law. "Sales of goods in Louisiana carry an implied warranty that the goods are free of hidden defects ('redhibitory vices') and are reasonably fit for their intended use." *Datamatic, Inc. v. Int'l Bus. Machines Corp.*, 795 F.2d 458, 461 (5th Cir. 1986); *accord* La. Civ. Code arts. 2520, 2524. Louisiana law permits waiver of the warranty against redhibitory defects in contracts between commercially sophisticated parties if the waiver is clear and unambiguous and brought to the buyer's attention. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-0750, 2010 WL 1416781, at *9 (W.D. La. Apr. 1, 2010) (citing La. Civ. Code art. 2548); *see also Prince v. Paretti Pontiac Co.*, 281 So. 2d 112, 117 (La. 1973).

In this case, the choice-of-law provision mandates the application of Colorado law to this dispute. Even assuming Louisiana law would otherwise apply, the choice-of-law provision does not contravene the public policy of Louisiana. The policy behind Louisiana's redhibition law is one of consumer protection. *R-Square Invs., Inc. v. Teledyne Indus., Inc.*, No. 96-2978, 1997 WL 436245, at *5 (E.D. La. July 31, 1997) (citing *Stumpf v. Metairie Motor Sales, Inc.*, 212 So. 2d 705, 710 (La. App. 4 Cir. 1968)). Although Louisiana's interest in protecting its consumers is important, when viewed in the context of a purely commercial, multistate transaction, it may be outweighed by another state's interest in furthering its procommerce policies. *Id.* Furthermore,

17

Louisiana law permits parties to contractually limit or exclude the warranty against redhibitory defects. *See* La. Civ. Code art. 2548. Accordingly, Axis's Louisiana redhibition claims are precluded by the valid choice-of-law provision in the amended Terms and Conditions of Sale. *See Hollybrook*, 2010 WL 1416781, at *9.

**C.    Partial Summary Judgment as to Breach of Contract Claims**

Axis asserts a cause of action against MREC for breach of contract on the grounds that the air compressors' failure to function as intended is a breach of the warranty of fitness. According to Axis, the air compressors sold by MREC were not reasonably fit for their intended use or Axis's particular purpose. MREC moves for summary judgment on Axis's breach of contract claims, arguing that such claims are barred by the amended Terms and Conditions of Sale agreed to by the parties. (Rec. Doc. 31-1, at 7.)

Paragraph 9 of the amended Terms provides that "Seller warrants to Buyer that any and all Seller-manufactured (or affiliate-manufactured) Products delivered to Buyer hereunder are delivered free of defects in workmanship and material." (Rec. Doc. 31-8.) Further, Paragraph 9 of the amended Terms provides the following language in bold, all capital letters: "**THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES (WRITTEN, ORAL, IMPLIED, OR OTHERWISE), AND ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTIES OF**

18

**MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY EXPRESSLY DISCLAIMED**." *Id.* Pursuant to this provision, MREC argues that Axis has expressly disclaimed the warranty for fitness for a particular purpose and warranty for an intended use.

Under Colorado law, warranties of merchantability and fitness arise in every contract for sale unless properly excluded. *Lease Fin., Inc. v. Burger*, 575 P.2d 857, 861 (Colo. App. 1977) (citing Colo. Rev. Stat. §§ 4-2-314 to -316). Section 2-316 of the Uniform Commercial Code as adopted in Colorado governs the modification and exclusion of warranties. *See* Colo. Rev. Stat. § 4-2-316. The implied warranty of merchantability may be disclaimed by a conspicuous writing that actually mentions "merchantability." *Id.* § 4-2-316(2); *see also Richard O'Brien Cos. v. Challenge-Cook Bros.*, 672 F. Supp. 466, 469 (D. Colo. 1987). The implied warranty of fitness may be disclaimed by conspicuous, disclaiming language, although the warranty need not be specifically mentioned. *See* Colo. Rev. Stat. § 4-2-316(2). For example, the following language is sufficient to exclude all implied warranties of fitness: "There are no warranties which extend beyond the description on the face hereof." *Id.*

A disclaimer is "conspicuous" if it is written so that a reasonable person against whom it is to operate ought to have noticed it. *Id.* § 4-1-201(10). Whether a term is conspicuous or not is a decision for the court. *Id.* An exclusion is conspicuous

if, for example, it is "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size." *Id.* §4-1-201(10)(B). *But see Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 646 (10th Cir. 1991) (holding that although the language in the disclaimer was printed in a different color, it was "so minute in size and detail" as to render it inconspicuous as a matter of law). When the contract is between a commercial buyer and a commercial seller, the seller is not obligated to draw the buyer's attention to the clause. *Richard O'Brien Cos.*, 672 F. Supp. at 470.

In the instant case, the warranty disclaimer in the amended Terms and Conditions of Sale was conspicuous and, by virtue of the language on the face of the invoices incorporating the amended Terms, agreed to by Axis. The relevant clause appears written entirely in uppercase letters and bold print, in contrast to the surrounding text of the same size. *See Irwin Seating Co. v. Int'l Bus. Machs. Corp.*, 306 F. App'x 239, 244 (6th Cir. 2009) (applying Colorado law) (holding disclaimer written entirely in uppercase letters was conspicuous); *Richard O'Brien Cos.*, 672 F. Supp. at 470 (holding that disclaimer was conspicuous because it was indented, though not in bold print). For this reason, the provision comes within the requirements insofar as disclaimer of the implied warranty of fitness is concerned. Furthermore, as required, the

provision specifically mentions the word merchantability. *See* Colo. Rev. Stat. § 4-2-316(2). Thus, the provision meets the requirements for disclaiming any implied warranty of merchantability as well.

Axis's breach of contract claims are for MREC's breach of the warranty of fitness. However, Axis has disclaimed all warranties other than the warranties that the products be delivered free from defects in workmanship and material. Because Axis disclaimed the warranties that form the basis of its breach of contract claims against MREC, MREC is entitled to summary judgment on those claims.

**D.   Limitation of Remedies**

Defendants argue that Axis agreed that Defendants would not be liable for any consequential, indirect, incidental, or special damages. Paragraph 16 of the amended Terms and Conditions of Sale contains the following provision excluding certain damages:

> **16. No Consequential Damages, etc.. NOTWITHSTANDING ANYTHING ELSE, UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, OR SPECIAL DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS OR REVENUE, LOSS OF TOTAL OR PARTIAL USE OF THE PRODUCTS OR SERVICES, DOWNTIME COSTS, AND DELAY COST) EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF SUCH DAMAGES ARE FORESEEABLE (REGARDLESS OF WHETHER DAMAGES ARE CHARACTERIZED AS ARISING OUT OF BREACH OF WARRANTY, TORT, CONTRACT, OR OTHERWISE).**

(Rec. Doc. 31-8.) In addition, Paragraph 9 of the amended Terms limits the remedies available to Axis for defects in MREC's products to either repair, replacement, or return of the purchase

price. *See id.* Defendants argue that by virtue of the limitation of remedies set forth in the amended Terms, Axis is precluded from recovering any damages other than the price paid for the allegedly defective air compressors.

The Court need not reach a conclusion on any limitation of remedies for the purposes of the instant motion. As discussed above, Defendants are entitled to summary judgment dismissing Axis's claims for redhibition under Louisiana law and breach of contract. Therefore, any discussion of a limitation-of-remedies provision applicable to those claims is moot. Further, Axis's negligent misrepresentation claims are not subject to the instant motion. (Rec. Doc. 44, at 9.) To the extent Defendants argue that the parties agreed to limit the remedies available for Axis's negligent representation claims, Defendants may reurge such argument in an appropriate motion.

**E.    Declaratory Judgment Regarding Liability**

Lastly, Defendants seek a declaratory judgment limiting their aggregate liability, if any, to the actual purchase price paid for the air compressors at issue. Defendants point to the following limitation-of-liability provision in the amended Terms and Conditions of Sale:

> **15. Limitation of Liability. NOTWITHSTANDING ANYTHING ELSE, THE TOTAL LIABILITY, IN THE AGGREGATE, OF SELLER ARISING OUT OF THE CONTRACT OR THE PERFORMANCE OR BREACH THEREOF, OR THE DESIGN, MANUFACTURE, SALE, DELIVERY, . . . OPERATION OR USE OF ANY PRODUCT OR SERVICE SHALL BE**

**LIMITED TO THE ACTUAL PURCHASE PRICE AMOUNT PAID BY BUYER TO SELLER FOR THE SPECIFIC PRODUCT/SERVICE GIVING RISE TO THE CLAIM (REGARDLESS OF WHETHER DAMAGES ARE CHARACTERIZED AS ARISING OUT OF BREACH OF WARRANTY, TORT, OR CONTRACT, OR OTHERWISE).**

(Rec. Doc. 31-8.) Defendants argue that this provision places a cap on the total amount for which Defendants can be liable to Axis with regard to any claims having to do with the air compressors at issue. Specifically, Defendants argue that Axis agreed that Defendants' liability would be limited to the purchase price of the equipment delivered. In opposition, Axis argues that declaratory judgment is inappropriate at this time because discovery has not been completed and Axis has not had the opportunity to fully develop its case for damages.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, allows a federal court to issue declaratory relief "[i]n a case of actual controversy within its jurisdiction." The Supreme Court has indicated that this act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Declaratory relief is appropriate under the act when a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

As noted above, Axis's negligent misrepresentation claims are not subject to the instant motion. (Rec. Doc. 44, at 9.) Therefore,

23

to the extent Defendants seek a declaratory judgment limiting their total liability to a specific amount, the Court exercises its substantial discretion to deny a declaratory judgment at this time. *Wilton*, 515 U.S. at 286; *see also Hollybrook*, 2010 WL 1416781, at *10 (denying motion for declaratory judgment because buyer had not yet had the opportunity to develop its case for damages and seller had not demonstrated that buyer could not establish damages beyond the range seller requested).

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *MREC's Motion for Partial Summary Judgment and Motion for Declaratory Judgment and ACC's Motion for Summary Judgment and Motion for Declaratory Judgment* **(Rec. Doc. 31)** is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claims for redhibition under Louisiana law against MREC and ACC, and claims for breach of contract against MREC are **DISMISSED WITH PREJUDICE**. Defendants' motion for a declaratory judgment is **DENIED**.

New Orleans, Louisiana, this 22nd day of February, 2016.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE