```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


    AXIS OILFIELD RENTALS,              CIVIL ACTION
    LLC
    VERSUS                              NO: 15-1627

    MINING, ROCK, EXCAVATION            SECTION: "J"(4)
    AND CONSTRUCTION, LLC,
    ET AL.
```

### ORDER & REASONS

Before the Court is a *Motion to Alter or Amend Judgment Pursuant to FRCP 59(e)* **(Rec. Doc. 48)** filed by Plaintiff, Axis Oilfield Rentals, LLC ("Axis"), and an opposition thereto (Rec. Doc. 51) filed by Mining, Rock, Excavation and Construction LLC ("MREC") and Atlas Copco Compressors LLC ("ACC") (collectively "Defendants"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

### FACTS AND PROCEDURAL BACKGROUND

Axis commenced this litigation in state court on March 25, 2015, seeking damages allegedly sustained in connection with its purchase of forty-one air compressors manufactured by ACC and allegedly sold by MREC in 2014.[1] (Rec. Doc. 1-1, at 3-4.) According

---

[1] In its complaint, Axis alleges that it purchased forty-one air compressors from MREC in two sales: thirty-four units on March 6, 2014, and seven units on April 30, 2014. (Rec. Doc. 1-1, at 3.) Defendants have provided evidence to the contrary. In connection with their motion for partial summary judgment, Defendants asserted that only thirty-six of the air compressors at issue were sold by MREC. (Rec. Doc. 31-1, at 3.) In support of this assertion, Defendants submitted invoices showing that the thirty-six air compressors sold by MREC to Axis were purchased in three separate sales: a March 18, 2014 invoice for

to Axis's complaint, the air compressors began to experience mechanical problems within months of being put into service. *Id.* at 4. Axis alleges causes of action against ACC and MREC for redhibition under Louisiana law, and asserts additional causes of action against MREC for breach of contract and negligent misrepresentation. *Id.* at 4-10. Axis seeks damages in the form of (1) return of the purchase price of the air compressors at issue, with interest from the time it was paid; (2) reimbursement of the reasonable expenses occasioned by the sale; (3) the costs incurred for the preservation of the air compressors; (4) all other damages associated with the air compressors' mechanical problems; and (5) attorney's fees. *Id.*

On August 7, 2012, Axis submitted a "Credit Application" with MREC. (Rec. Doc. 31-4.) The Credit Application, signed by Axis's president, stated that Axis, "intending to be legally bound hereby, herein agrees and will comply with [the] Terms and Conditions of sale, located on page three (3) of this application." *Id.* at 2. The "Terms and Conditions of Sale" ("original Terms") on page three of the Credit Application included a choice-of-law provision, a

---

twenty-seven compressors, an April 30, 2014 invoice for seven compressors, and a July 8, 2014 invoice for two compressors. *Id.* (citing Rec. Doc. 31-9). According to Defendants, Axis purchased the remaining five air compressors at issue from the Texas company Big Eight Supply & Tool—not MREC—on May 16, 2014. *Id.* (citing Rec. Doc. 31-10). Axis provided no evidence of the invoices and did not dispute Defendants' assertion that the May 18, 2014 invoice, the April 30, 2014 invoice, and the July 8, 2014 invoice, submitted as Exhibit "E" to their motion for partial summary judgment, were the invoices relevant to Axis's claims against Defendants.

2

limitation-of-liability provision, a provision excluding consequential damages, and warranty disclaimers. *Id.* at 3. The original Terms were amended on January 1, 2014. (Rec. Doc. 31-8.) Similar to the original terms, the amended Terms and Conditions of Sale ("amended Terms") contain a choice-of-law provision, a limitation-of-liability provision, a provision excluding consequential damages, and warranty disclaimers. *Id.*

On December 24, 2015, Defendants filed a motion for partial summary judgment, arguing that either the original or amended terms applied to Axis's purchase of the equipment at issue. In particular, Defendants claimed that the amended Terms were attached to the invoices Axis received for its purchase of air compressors from MREC.[2] (Rec. Doc. 31-1, at 2.) However, Axis claimed that it initially received the invoices through electronic mail and the invoices it received electronically included only the front side of the invoices—not the reverse side, which Defendants claimed included the Terms and Conditions of Sale. (Rec. Doc. 36, at 2.) According to Axis, its president signed the electronically-received invoices, returned the signed invoiced though electronic mail, and directed JPMorgan Chase Bank to pay Defendants on behalf of Axis. *See id.* Axis claimed Defendants then shipped the air compressors to Axis and mailed hard-copy invoices to Axis's

---

[2] Defendants assert that the invoices for Axis's purchase of air compressors from MREC were printed on paper that was preprinted with the applicable Terms and Conditions of Sale on the reverse side. (Rec. Doc. 31-5, at 3.)

3

headquarters. *Id.* These hard-copy invoices included the reverse side with the Terms and Conditions of Sale. *Id.*

In Defendants' motion for partial summary judgment, as they have done in connection with previous filings in this matter, Defendants argued that a statement on the front of the invoices received by Axis referenced and incorporated the applicable Terms and Conditions on the reverse. Specifically, Defendants asserted that the front of each invoice contained the following statement: "THE ADDITIONAL TERMS AND CONDITIONS ON THE NEXT PAGE OF THIS INVOICE ARE MADE PART OF THIS INVOICE." (Rec. Doc. 31-1, at 2.) Considering that statement on the front of the pertinent invoices, and evidence that Axis had actually received the original and amended Terms and Conditions throughout its business relationship with Defendants, the Court held that the amended Terms and Conditions applied to the sale of the defective air compressors at issue. (Rec. Doc. 47, at 13-14) (citing *AWC, Inc. v. CSF Const., Inc.*, 931 So. 2d 382, 386-87 (La. App. 4 Cir. 2006)). The Court issued its Order and Reasons granting Defendants' motion in this regard on February 22, 2016.

Axis filed the instant *Motion to Alter or Amend Judgment Pursuant to FRCP 59(e)* **(Rec. Doc. 48)** on March 21, 2016, and requested that the motion be heard with oral argument. Defendants opposed the motion on March 29, 2016. Because oral argument is

unnecessary at this time, the Court now considers the motion on the briefs.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit treats a motion for reconsideration challenging a prior judgment as either a motion "to alter or amend" under Rule 59(e) or a motion for "relief from judgment" under Rule 60(b) of the Federal Rules of Civil Procedure. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). The difference in treatment is based on timing. If the motion is filed within twenty-eight days of the entry of judgment, then it falls under Rule 59(e). *Id.; accord* Fed. R. Civ. P. 59(e). However, if the motion is filed more than twenty-eight days after the entry of judgment, but not more than one year after the entry of judgment, it is governed by Rule 60(b). *Lavespere*, 910 F.2d at 173; *accord* Fed. R. Civ. P. 60(c).

In the present case, Axis filed its motion on March 21, 2016, which is twenty-eight days from the entry of the Court's Order and Reasons granting in part Defendants' motion for partial summary judgment. Because no final judgment has been rendered in this case, Axis's motion is treated as a motion to alter or amend an

5

interlocutory order under Rule 54(b). Rule 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. Fed. R. Civ. P. 54(b). Under Rule 54(b), the district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). The general practice of courts in this district has been to evaluate Rule 54(b) motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment. *See, e.g.*, *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010).

Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used "sparingly" by the courts. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A motion to alter or amend calls into question the correctness of a judgment and is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." *Id.; see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Manifest error is typically defined as "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable,

indubitable, indisputable, evidence, and self-evidence." *In re Energy Partners, Ltd.*, No. 09-32957, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009); *see also Pechon v. La. Dep't of Health & Hosp.*, No. 08-664, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) ("'[M]anifest error' is one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law.'").

The Fifth Circuit has noted that such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Templet*, 367 F.3d at 478-79. Rule 59(e) motions "cannot be used to raise arguments that could, and should, have been made before the judgment issued." *Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co.*, 542 F.3d 1053, 1058 (5th Cir. 2008). Accordingly, this Court may properly decline to consider new arguments on reconsideration if those arguments were available to the movant prior to the order.

Nor should a Rule 59(e) motion be used to "re-litigate prior matters that . . . simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Thus, to prevail on a motion under Rule 59(e), the movant must clearly establish at least one of three factors: (1) an intervening change in the controlling law; (2) the availability of new evidence not previously available;

7

or (3) a manifest error in law or fact. *Schiller*, 342 F.3d at 567; *see also Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) ("A motion to alter or amend judgment 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.'").

## **PARTIES' ARGUMENTS AND DISCUSSION**

Axis moves for the Court to amend its February 22, 2016 Order and Reasons to correct a manifest error of fact. (Rec. Doc. 48-1, at 1.) Axis claims that the Court's assessment of the evidence was erroneous. *Id.* Axis argues that the Court based its ruling on a number of invoices that are not subject to Axis's claims. *Id.* (citing Rec. Doc. 31-14, at 3-20). According to Axis, the Court misidentified the pertinent invoices for the equipment at issue and erred in relying on irrelevant invoices as the basis for its decision. *Id.* at 1-2.

Axis misunderstands the Court's reasoning and the relevance of the invoices submitted as Exhibit "J" (Rec. Doc. 31-14) to Defendants' motion. Defendants did not identify the invoices in Exhibit "J" as the pertinent invoices for the air compressors at issue, and the Court did not consider them as such in its Order and Reasons. Rather, Defendants submitted these invoices as evidence of the extensive history of business dealings between the parties, a course of dealing which included the utilization of the Terms and Conditions. Likewise, the Court considered these

8

invoices as undisputed evidence that Axis had received the original and amended Terms and Conditions in the past. (Rec. Doc. 47, at 14.) Accordingly, the Court found that Axis's knowledge of the amended Terms and Conditions could not be the subject of disagreement among reasonable minds. *Id.* This evidence supported the conclusion that statements on the front of the invoices referring to the Terms and Conditions on the reverse were sufficient to incorporate the Terms and Conditions, regardless of whether Axis initially received the reverse pages of the invoices for the air compressors at issue. *Id.* at 13-14 (citing *AWC, Inc.*, 931 So. 2d at 386-87).

The Court's decision was based on the fact that the invoices for the air compressors at issue contained a statement on the front specifically incorporating the Terms and Conditions on the reverse. Defendants identified three invoices as the pertinent invoices for the air compressors that are the subject of Axis's claims: a May 18, 2014 invoice, an April 30, 2014 invoice, and a July 8, 2014 invoice. (Rec. Doc. 31-1, at 3.) Defendants submitted these invoices as Exhibit "E" to their motion. (Rec. Doc. 31-9.) Each of these invoices contained a statement on the front referring to additional terms on the reverse. *Id.* at 4, 6-7.

At no point prior to the entry of the Court's Order and Reasons did Axis dispute Defendants' assertion that these three invoices were the pertinent invoices for the air compressors at

issue. In response to Defendants' statement that the Terms and Conditions were attached to the reverse side of the invoices for each purchase Axis made from MREC, Axis disputed receiving the reverse sides of the invoices but it conceded that it received and signed the front pages of the invoices. (Rec. Doc. 36-2, at 3.) Accordingly, the Court found that Axis did not dispute that it received and signed the pertinent invoices identified by Defendant in Exhibit "E" to their motion.

Now, for the first time in this litigation, Axis addresses the Defendants assertion that the pertinent invoices are the three invoices submitted as Exhibit "E" to their motion. Specifically, Axis claims that one other invoice in the record, a pro forma invoice dated April 25, 2014, is subject to Axis's claims for the air compressors at issue. (Rec. Doc. 48-1, at 3.) This invoice, which is signed, does not include a statement incorporating the Terms and Conditions. *Id.* (citing Rec. Doc. 31-14, at 1.) In addition, Axis argues now that the invoices Defendants claimed to be pertinent are not signed and are therefore irrelevant. *Id.*

In this case, the underlying facts were well within Axis's knowledge prior to the Court's entry of the Order and Reasons. A motion to alter or amend "cannot be used to raise arguments that could, and should, have been made before the judgment issued." *Marseilles Homeowners Condo. Ass'n*, 542 F.3d at 1058. These arguments should have been raised by Axis in response to

Defendants' motion, before the Court granted partial summary judgment.

In the alternative, Axis requests that the Court allow Axis an opportunity to submit additional briefing and documentation regarding the identification of the pertinent invoices. (Rec. Doc. 48-1, at 4.) Axis argues that Defendants did not raise the issue of whether any statement in the invoices incorporated the Terms and Conditions. *Id.* at 2. According to Axis, the issue was first raised by the Court. *Id.* at 4. Axis points out that Defendants did not present a statement in their statement of uncontested facts discussing whether the signed invoices for the air compressors at issue made any reference to additional terms and conditions. *Id.* Consequently, Axis did not submit evidence of additional invoices.

Axis's argument is unconvincing. Although a district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party, that did not occur in this case. Even if there was some technical flaw in Defendants' motion, the issue was fully presented and was ready for resolution. Throughout this litigation, Defendants have consistently raised the argument that statements on the front of the invoices specifically incorporated the Terms and Conditions. Defendants initially raised the argument in their First Amended Answer. (Rec. Doc. 19, at 3.) Next, Defendants raised this argument in connection with their motion to

11

transfer pursuant to a forum selection clause.[3] (Rec. Doc. 23, at 4-5.) In fact, the Court acknowledged this argument in its Order and Reasons on that motion. (Rec. Doc. 24, at 5-6.) Subsequently, Defendants raised this argument in their memorandum in support of their motion for partial summary judgment. (Rec. Doc. 31-1, at 2.) Defendants made this argument again in their reply. (Rec. Doc. 44, at 4-5.) Thus, Axis's argument that Defendants did not raise this issue rings hollow.

"Absent formal notice, the nonmoving party may nevertheless be deemed to be on notice—enabling a court to enter summary judgment *sua sponte*—if the basis on which the motion is granted is otherwise raised in a manner sufficient to make the nonmoving party aware that failure to present evidence on the issue could be grounds for summary judgment." *Loughman v. Sw. Bell Tel. Co.*, 131 F.3d 140 (5th Cir. 1997). While it is true that Defendants' statement of uncontested facts did not include a statement regarding the reference to the Terms and Conditions on the front of the invoices, Axis was given ample notice and opportunity to respond to Defendants' arguments. Indeed, the Court granted Axis leave to file a surreply to Defendants' motion, giving Axis two

---

[3] Defendants raised this argument in their reply in support of their motion to transfer. (Rec. Doc. 23, at 4-5.) "Plaintiffs completely ignore the fact that the front of each invoice, which they admittedly received, contained a statement in all capital letters specifically incorporating the Terms and Conditions into each invoice. . . . THE ADDITIONAL TERMS AND CONDITIONS ON THE NEXT PAGE OF THIS INVOICE ARE MADE PART OF THIS INVOICE." *Id.* at 4.

12

opportunities over a period of sixty days to respond. Yet, Axis failed to address this argument. Even assuming *arguendo* that summary judgment on the grounds that the Terms and Conditions were incorporated by reference could be properly characterized as *sua sponte*, the Court finds that Axis "was on notice that [it] had to come forward with all of [its] evidence" and had an adequate opportunity to present argument opposing judgment on that basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion to Alter or Amend Judgment Pursuant to FRCP 59(e)* **(Rec. Doc. 48)** is **DENIED**.

New Orleans, Louisiana, this 6th day of April, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE