UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

AXIS OILFIELD RENTALS,                    CIVIL ACTION
LLC

VERSUS                                    NO: 15-1627

MINING, ROCK, EXCAVATION                  SECTION: "J"(4)
AND CONSTRUCTION, LLC,
ET AL.

## ORDER & REASONS

Before the Court are two motions filed by the Defendant(s)[1]
Mining, Rock, Excavation and Construction, LLC (Defendants). First
is a *Motion to Exclude Testimony or Evidence on Economic Losses*.
**(R. Doc. 64.)** Second is a *Motion for Summary Judgment and
Declaratory Judgment*. **(R. Doc. 61.)** Plaintiff, Axis Oil Field
Rentals, LLC (Plaintiff or Axis), filed timely oppositions to the
motions. **(R. Docs. 65, 66.)** Having considered the motions and legal
memoranda, the record, and the applicable law, the Court finds
that Defendants' *Motion for Summary Judgment and Declaratory
Judgment* **(R. Doc. 61)** should be **GRANTED IN PART** and **DENIED IN PART**
and Defendants' *Motion to Exclude Testimony on Economic Losses* **(R.
Doc. 64)** should be **DENIED AS MOOT**.

---

[1] Defendant MREC filed both of these motions individually and on behalf of its
division Chicago Pneumatic Construction Equipment. (Rec. Doc. 61-1 at 1; Rec.
Doc. 64-1 at 1.)

## FACTS AND PROCEDURAL BACKGROUND

Axis commenced this litigation in state court on March 25, 2015, seeking damages allegedly sustained in connection with its purchase of forty-one air compressors sold by Defendants. (R. Doc. 1-1, at 3-4.) Axis originally alleged causes of action against Defendant Atlas Copco Compressors, LLC (ACC) for redhibition under Louisiana law, and for breach of contract and negligent misrepresentation against MREC. *Id.* On May 13, 2015 Defendant MREC removed this action on the basis of diversity jurisdiction. (R. Doc. 1.) On February 2, 2016, this Court issued Order and Reasons dismissing Plaintiff's redhibition claim against ACC and Plaintiff's breach of contract claim against MREC. (R. Doc. 47.) Accordingly, the only remaining claim before the Court is Plaintiff's negligent misrepresentation claim against MREC. (R. Doc. 47.) On August 9, 2016, Defendant MREC filed a *Motion for Summary Judgment and Declaratory Judgment*. (R. Doc. 61.) On August 11, 2016, Defendant MREC filed a *Motion to Exclude Axis' Testimony or Evidence on Economic Losses*. (R. Doc. 64.) These motions are now before the Court on the briefs and without oral argument.

## PARTIES' ARGUMENTS

### 1.   Motion to Exclude Testimony on Economic Losses

#### a.   Defendants' Arguments

Defendants seek to exclude testimony or evidence on Axis' alleged economic losses for two reasons: "First, that Axis' witness

lacks the requisite first-hand knowledge and proper education, training, and experience to present such evidence." (R. Doc. 64-1 at 5.) And second, that "the methodology employed by Axis in projecting its alleged economic losses is not consistent with generally accepted accounting principles and methodologies." *Id.* Defendants argue that Plaintiff's witness, Mr. Eddie Davis,[2] is not competent to offer testimony as an expert under Rule 701 or 702 of the Federal Rules of Evidence, because "his testimony is not rationally based on his own personal knowledge and perception and in no way satisfies the requirements of *Daubert*." *Id.* at 9. Defendants also argue that Mr. Davis' testimony is based on hearsay. Due to these alleged deficiencies, Defendants argue that Mr. Davis is not permitted to testify to any of the alleged losses in "Exhibit A."[3] (R. Doc. 64-2.)

### b.   Plaintiff's Arguments

Plaintiff argues that it is not offering Mr. Davis as a Rule 702 expert. (R. Doc. 65 at 2.) Rather, Plaintiff submits that "Axis will offer the factual testimonies of Axis employees to establish the damages Axis has suffered." *Id.* Plaintiff argues that the Federal Rules of Evidence permit these witnesses because their

---

[2] Mr. Davis is the CEO of Axis Oilfield Rentals, LLC.
[3] Exhibit A was produced by Plaintiff as its damages disclosure under Rule 26 of the Federal Rules of Civil Procedure. The document purports to quantify Plaintiff's damages. The document lists damages such as "lost revenue because of cash flow," loss of future business, lost revenue because of alleged problems with the "JD7 units," unit cost and "swap support," unit mobilization and demobilization costs, and accrued interest. (Rec. Doc. 38-1.)

testimony will be rationally based on their perception, helpful in determining a fact in issue, and not based on scientific, technical, or other specialized knowledge. *Id.* Plaintiff argues that it does not intend to offer Exhibit A as substantive evidence at trial, rather Plaintiff produced the exhibit to fulfill its Rule 26 obligation to provide an initial computation of each category of damages. However, Plaintiff argues that it is not precluded from offering witness testimony and business records to prove each category of damages listed in Exhibit A. *Id.* at 3.

## 2.   Motion for Summary Judgment and Declaratory Judgment

### a.   Defendants' Arguments

Defendants argue that Plaintiff is unable to present sufficient evidence to support its negligent misrepresentation claim. (R. Doc. 61-1 at 4.) Defendants argue that "Axis testified that the only misrepresentations it is claiming are statements made by MREC salesman Paul McClendon that the John Deere powered air compressors 'should be better' and 'should be more efficient.'" *Id.* at 4-5. Defendants argue that the statements allegedly made by MREC are not actionable as misrepresentations, because the terms "should be better" and "should be more efficient" are statements of probability and not firm statements of fact. *Id.* at 6. Further, Defendants argue that even if such statements were actionable, Axis could not have justifiably relied on those statements because: (1) Axis knew Mr. McClendon was a salesman, (2) knew he had not

4

observed the operation that the compressors were to be used for, and (3) Mr. McClendon was never given any written or technical engineering data regarding the specific use Axis had for the equipment. *Id.* at 7. Defendants argue that either Colorado or Texas law applies to Plaintiff's negligent misrepresentation claim.

Alternatively, Defendants argue that the parties' agreement prohibits, or at least limits, Plaintiff's negligent misrepresentation claim. *Id.* at 9. Defendants argue that the agreement's integration clause prohibits Axis from maintaining its negligent misrepresentation claim. *Id.* If not, Defendants argue that Plaintiff's damages are limited by the agreement's limitation on liability clause. *Id.* at 10. Further, Defendants argue that under Texas law Plaintiff's claim is barred by the economic loss rule. *Id.* at 14-17. Finally, Defendants argue that Plaintiff's claim for negligent misrepresentation should be dismissed because Plaintiff is unable to meet its burden of proving damages. *Id.* at 13. Defendants reiterate the same objections from their *Motion to Exclude Testimony on Economic Damages* (R. Doc. 64.)

**b.   Plaintiff's Arguments**

First, Plaintiff argues that Louisiana law should apply to its negligent misrepresentation claim. (R. Doc. 66 at 4.) Plaintiff argues that the contract does not contain sufficiently broad language to encompass tort claims. *Id.* at 5. Accordingly, Plaintiff argues that this Court must conduct a choice of law analysis, and

such analysis results in Louisiana law applying to Plaintiff's negligent misrepresentation claim. *Id.* at 7-9. Second, Plaintiff argues that genuine issues of material fact remain that preclude summary judgment on Plaintiff's negligent misrepresentation claim. *Id.* at 9. Specifically, Plaintiff argues that Paul McClendon told Axis that the John Deere air compressors would perform the job required by Axis' customers under the conditions and specifications described by Axis. *Id.* at 10. Despite these alleged affirmations, and after Plaintiff's alleged reliance upon such statements, Plaintiff argues that the air compressors did not perform up to the conditions and specifications that Mr. McClendon allegedly assured. *Id.*

Third, Plaintiff argues that the agreement's integration clause does not prohibit Axis from maintaining a negligent misrepresentation claim. *Id.* at 11. Plaintiff argues, *inter alia*, that the clause does not contain clear and specific language prohibiting Axis from maintaining its claim. *Id.* Additionally, Plaintiff argues that the terms and conditions do not limit Axis' damages. Plaintiff argues that Defendants' misrepresentations prior to the formation of the agreement induced Axis into entering the contract, and as such, are unrelated to the breach of contract itself. *Id.* at 13. Fourth, Plaintiff argues that Axis' claim is not barred by the economic loss doctrine regardless of whether Louisiana, Colorado, or Texas law applies. *Id.* at 15-17. Finally,

Plaintiff argues that its claim should not be dismissed for lack of evidence on damages. *Id.* at 15. Plaintiff argues that it has submitted "thousands of pages of documentation" to prove its damages, and such evidence will be presented by Axis employees with personal knowledge of such damages. *Id.*

## **LEGAL STANDARD**

### 1.   **Summary Judgment**

A federal court sitting in diversity must apply federal procedural law. *Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury

could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

**2.   Declaratory Judgment**

In analyzing whether to decide or dismiss the declaratory judgment suit, the district court followed the three steps this court set out in *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).

<u>**DISCUSSION**</u>

**1.   Summary Judgment**

    **a.   Governing Law**

The choice of law provision in the Amended Terms and Conditions of the parties' contract provides:

> The validity, performance, and all other matters arising out of or relating to the interpretation and effect of these Terms and/or the contract shall be governed by and construed in accordance with the internal laws of the U.S. State in which Seller's applicable sales or service facility is located without giving effect to any choice of conflict of law provisions or rule (whether in such State or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than those of such State.

(R. Doc. 38-1.) Determining which law applies to Plaintiff's negligent misrepresentation claim raises its own choice of law issues. This Court has already determined that the choice-of-law

provision is valid. (Rec. Doc. 47.) However, this Court has not determined which jurisdiction's law governs the scope of the choice-of-law provision.

"[D]etermining which jurisdiction's law governs the scope of a valid choice-of-law clause is not a simple matter." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. 15-1720, 2015 WL 7281618, at *10 (E.D. La. Nov. 16, 2015) (citing *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005)). Some jurisdictions have concluded that the scope of a choice of law provision is a matter of contract interpretation subject to the law chosen by that provision. *Lehman Bros.*, 414 F.3d at 333; *see also Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024, 1032 (Del. Ch.) aff'd, 894 A.2d 407 (Del. 2005) (concluding that, as "a matter of hornbook law," the scope of a choice of law provision is determined under the law that the provision selects). However, the majority view is that the scope of a choice-of-law clause is determined by the same law that governs its enforceability, the law of the forum state. *Lehman Bros.*, 414 F.3d at 332 (collecting cases); *Cypress Pharma., Inc. v. CRS Mgmt., Inc.*, 827 F. Supp. 2d 710 (S.D. Miss. 2011); *Pyott-Boone Electrs., Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 543 (W.D. Va. 2013) (collecting cases); *see also Schwan's Sales Enters., Inc. v. SIG Pack*, Inc., 476 F.3d 594, 597 (8th Cir. 2007) (concluding that interpreting a choice-of-law

clause's scope under the chosen law rather than the forum law would "give effect to that provision before the court's analytical determination of what effect it should have").

Fortunately, the Court need not enter this conflict. When "there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). Upon reviewing the applicable law, the Court concludes that regardless of whether Texas, Louisiana, or Colorado law applies to the scope determination, the choice-of-law provision extends to Axis' extra-contractual claim for negligent misrepresentation. *See Wright's*, 2015 WL 7281618, at *10 (noting similarity between Texas and Louisiana law in interpretation of broad and narrow choice-of-law provisions and whether such provisions encompass tort claims); *City and Cty. of Denver v. Dist. Court in and For City and Cty. of Denver*, 939 P.2d 1353, 1367 (Colo. 1997) (discussing broadly worded arbitration clauses as intending to encompass any dispute between the parties); *Goodwin v. Bruggeman-Hatch*, No. 13-2973, 2014 WL 3057198, at *1 (D. Colo. July 7, 2014) (characterizing broadly worded forum-selection clause language as "sufficiently comprehensive to encompass plaintiff's claims").

Unlike many of the cases cited by Plaintiff, the choice-of-law provision in this case contains sufficiently broad language

that encompasses Plaintiff's negligent misrepresentation claim. Specifically, the provision contains the broad language "all other matters . . . relating to the . . . contract." The Court finds that such language is intended to be all-encompassing, and that Plaintiff's negligent misrepresentation is a matter included in "all other matters" that are related to the contract. Further, this Court's previous Order held that "the choice-of-law provision unambiguously provides for the application of Colorado law to matters arising out of the sale of the air compressors in this case." (R. Doc. 47 at 16.) Accordingly, Colorado law applies to Plaintiff's negligent misrepresentation claim.

    **b.   Plaintiff's Negligent Misrepresentation Claim**

Under Colorado law, a negligent misrepresentation occurs when: (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment. *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011). In other words, Plaintiff must present a genuine issue of material fact that Defendants made a misrepresentation of a past or present material fact at the time of contracting, and that Plaintiff entered the contract in reliance on that

misrepresentation. *See id.* Further, Plaintiff must establish that as a result of reasonable reliance on the alleged misrepresentations that it suffered monetary damages. *Black Educ. Network, Inc. v. AT&T Broadband, LLC*, 154 F. App'x 33, 45 (10th Cir. 2005) (applying Colorado law).

### i. Integration Clause

Defendants argue that the parties' agreement prohibits or limits Plaintiff's negligent misrepresentation claim. (R. Doc. 61-1 at 9.) Essentially, Defendants argue that the integration clause defeats Plaintiff's claim of reasonable or justifiable reliance on Mr. McClendon's statements, because the clause provides that the terms and conditions of the sale are the parties' entire agreement. Plaintiff argues that the integration clause is not couched in clear and specific language and thus does not defeat its negligent misrepresentation claim. (R. Doc. 66 at 11.) Both parties cite to *Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69 (Colo. 1991) in support of their argument.

In *Keller*, the Colorado Supreme Court explained that integration clauses generally permit contracting parties to limit future contractual disputes to issues relating to the reciprocal obligations expressly set forth in the executed document. *Id*. (citing *KN Energy, Inc. v. Great W. Sugar Co.*, 698 P.2d 769 (Colo. 1985). The court noted, however, that "the mere presence of a general integration clause in an agreement does not bar a claim

for negligent or fraudulent misrepresentation." *Id.* In *Keller* the integration clause provided:

> Buyer recognizes that any advertisements, brochures, and other written statements which he may have read . . . as well as any oral statement which may have been made to him, concerning the potential of the Harvestore . . . are not guarantees and he has not relied upon them as such.
>
> [Buyer has] read and understood the terms and conditions of this purchase order including the warranties, disclaimers and terms and conditions herein given to me, either by the manufacturer or the seller.
>
> [Buyer relies] on no other promises or conditions and regards that as reasonable because these are fully acceptable to [Buyer].

The court found that this language did not "clearly and specifically disclaim reliance" by the buyer-plaintiffs on all representations made by the seller prior to the execution of the contract and did not bar the plaintiffs' negligent misrepresentation claim. *Id.* at 73-74; *see also Colo. Coffee Bean, LLC v. Peaberry Coffee, Inc.*, 251 P.3d 9 (Colo. App. 2010) (finding contract containing "specific language" that disclaimed accuracy of income information precluded plaintiffs from claiming reasonable reliance); *Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, 247 F. App'x 90, 99 (10th Cir. 2007) (finding contract clauses negated claim for negligent misrepresentation where warranty clause disclaimed accuracy of information, integration clause was "specific and unambiguous," and contract contained a "broad limitation on tort and negligence liability").

In this case, the integration clause at issue provides:

THESE TERMS CONTAIN THE ENTIRE AGREEMENT BETWEEN SELLER
AND BUYER WITH RESPECT TO TERMS AND CONDITIONS AND
SUPERSEDE ALL PREVIOUS OR CONTEMPORANEOUS STATEMENTS,
AGREEMENTS AND REPRESENTATIONS WITH RESPECT TO TERMS AND
CONDITIONS.

(R. Doc. 31-8.) The Court finds that this integration clause does
not clearly and specifically disclaim reliance. First, the
language does not reference Plaintiff's reliance, or lack thereof.
*See Keller*, 819 P.2d at 74. Second, unlike *Colorado Coffee Bean* or
*Student Marketing Group, Inc.*, Defendants do not argue, and the
Court is unable to find, that any language within the contract
disclaims the accuracy of any information nor does the contract
contain a broad limitation on tort and negligence liability. (R.
Doc. 38-1.) For these reasons, the Court finds that the integration
clause does not bar Plaintiff's negligent misrepresentation claim.

### i.   Economic Loss Rule

Defendants also argue that the economic loss rule bars
Plaintiff's negligent misrepresentation claim. (R. Doc. 61-1 at
14.) Colorado courts have adopted the "economic loss rule," which
provides that "a party suffering only economic loss from the breach
of an express or implied contractual duty may not assert a tort
claim for such a breach absent an independent duty of care under
tort law." *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1264
(Colo. 2000); *Grynberg v. Agri Tech., Inc.*, 10 P.3d 1267, 1269
(Colo. 2000). Economic loss includes those "damages other than

physical harm to persons or property." *Town of Alma*, 10 P.3d at 1264. Whether the economic loss rule bars a negligence claim turns on whether the defendant owed the plaintiff a duty of care external to the contract. *A.C. Excavating v. Yacht Club II Homeowners Assoc., Inc.*, 114 P.3d 862, 866 (Colo. 2005). This is a question of law to be determined by a court. *Id.* In making this determination, a court should focus on the contractual setting between the parties. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004). Three factors guide the inquiry: (1) whether the relief sought in negligence is the same as that sought in contract; (2) whether a common law, negligence-based duty of care exists; and (3) "whether the negligence duty differs in any way from the contractual duty." *Id.; see Grynberg*, 10 P.3d at 1270. If no duty of care exists independent of the contract, a plaintiff's claim must necessarily fail. *BRW*, 99 P.3d at 74.

This year the Colorado Supreme Court explained that "a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 607 (Colo. 2016). In *Van Rees*, the court found that, "[l]ike the plaintiffs in *Keller*, Van Rees's tort claims are based on misrepresentations made prior to the formation of the contracts, which he alleges induced him to enter

into the contracts and therefore violated an independent duty in tort to refrain from such conduct. As such, the claims are not barred by the economic loss rule." *Id.* The court also explained that there is an independent tort duty regarding negligent misrepresentations *inducing the contractual arrangement*. *Id.* (emphasis added). Plaintiff raises this exact argument—Defendants' misrepresentations induced Plaintiff into the contractual arrangement. (R. Doc. 66 at 10.) Further, these alleged representations were not negotiated terms of the parties' contract. (R. Doc. 38-1.) Thus, the economic loss rule does not bar Plaintiff's claim for Defendants' allegedly negligent misrepresentations that it argues induced the contractual arrangement. *See Van Rees*, 373 P.3d at 607; *Cf*. *Port-A-Pour v. Peak Innovations, Inc*., No. 13-1511, 2014 WL 3512851, at *4 (D. Colo. July 14, 2014) (finding that economic loss rule barred claim for negligent misrepresentation when the "duty" at issue arose from the promises made between the parties regarding the contractual obligations, as the "promises" or "representations" at issue were negotiated terms of the parties' contract).

## ii.    Summary Judgment

The Court must now determine whether there is a genuine issue of material fact as to any of the elements of Plaintiff's negligent misrepresentation claim. Again, a negligent misrepresentation occurs where: (1) one in the course of his or her business,

profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment. *Allen*, 252 P.3d at 482. Plaintiff must prove that it justifiably relied on the false information which resulted in monetary damages. *See Black Educ. Network*, 154 F. App'x at 45; *Barfield v. Hall Realty, Inc.*, 232 P.3d 286, 290 (Colo. App. 2010). The misrepresentation must be of a material fact that presently exists or has existed in the past. *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 237 (Colo. 1995). Expressions of opinion cannot support a misrepresentation claim. *Id.*

Plaintiff argues that the company was induced by Mr. McClendon into buying the John Deere air compressors. (R. Doc. 66 at 10.) Specifically, Plaintiff argues that "Paul McClendon told Axis that the [John Deere] air compressors would perform the job required by Axis' customers under the conditions and specification[s] described by Axis to Defendants. This statement was not and is not true." *Id.* Further, Plaintiff argues that its reliance was justifiable and reasonable because, as a young company, Axis believed Defendants were the national leader in manufacturing air compressors, that Mr. McClendon knew his products, and that Mr.

McClendon was capable of providing Axis with accurate information. *Id.* Plaintiff argues that its reliance was reasonable and justifiable because Mr. McClendon, as a regional sales manager, received comprehensive education on the John Deere air compressors and knew the needs of Axis' customers. *Id.* Finally, Plaintiff claims that it "unquestionably would not have purchased these air compressors . . . without the assurances provided by Paul McClendon with the subsequent knowledge that those assurance[s] and statements [were] false." *Id.*

Defendants argue that the alleged statements made by Mr. McClendon are not actionable as a misrepresentation. (R. Doc. 61-1 at 6.) Specifically, Defendants argue that Mr. McClendon's statements that the air compressors "should be better" or "should be more efficient" are statements of probability and not statements of fact. Defendants argue that even if the statements made by Mr. McClendon are actionable, Axis did not justifiably rely on such statements, because: (1) Axis knew Mr. McClendon was a salesman, (2) Axis knew Mr. McClendon had not observed the operation for which the compressors were going to be used, and (3) Mr. McClendon was never given any "written" technical or engineering data regarding the specific use Axis had for the equipment. *Id.* at 7.

The Court finds that genuine issues of material fact remain which preclude summary judgment. Specifically, the deposition testimony reveals that there is a genuine issue of material fact

as to what exactly Mr. Mclendon told Plaintiff's employees. Defendants argue that "Mr. McClendon was never given any written technical or engineering data regarding the specific use Axis had for the equipment." (R. Doc. 61-1 at 7) (emphasis added). However, Plaintiff argues, *inter alia*, that Axis described the conditions and specifications of the compressors to Mr. McClendon, and that Mr. McClendon made representations that the air compressors would perform as Plaintiff's satisfaction. (R. Doc. 66 at 10; R. Doc. 66-1, at 6-10.)

Eddie Davis testified that Chad Breckenridge and Dustin Labat told him that Mr. McClendon told them that the John Deer air compressors "should perform better and that they should be more efficient." (R. Doc. 66-1, at 10-11.) However, Dustin Labat was also deposed and testified that Mr. McClendon said that the John Deere air compressors "were superior to the Perkins [compressors]. [The John Deere compressors] would do the same job, if not the same or better. It was the new tier 4, which is supposed to be the best of the best and our customers should be happy because they are not either meeting or exceeding the government standards for their diesel [emissions]."[4] (R. Doc. 66-4, at 1-2.) A statement of fact is one that is "subject to measure or calibration." *Lariviere, Grubman & Payne, LLP v. Phillips*, No. 07-1723, 2011 WL 650001, at

---

[4] These statements are not hearsay as they are not being offered for the truth of the matter asserted therein.

*18 (D. Colo. Feb. 11, 2011). Mr. Labat clearly testified that Mr. McClendon told him that the John Deere compressors would do the same job or better and specifically stated that Mr. Labat's customers would be happy because "they are not meeting or exceeding the government standards for their diesel [emissions]. (R. Doc. 66-4, at 1-2.) Thus, Mr. McClendon's statements appear to be more than mere puffery or opinion. Additionally, in general, "[w]hether there has been a misrepresentation of fact is for the fact-finder to determine." *Mehaffy, Rider, Windholz & Wilson*, 892 P.2d at 238 (citing *Feit v. Donahue*, 826 P.2d 407, 412 (Colo. App. 1992)). Therefore, summary judgment is inappropriate as genuine issues of material fact still exist.

## 2.   Declaratory Judgment

Defendants seek a declaration that if Plaintiff's negligent misrepresentation claim is not barred by the parties' agreement, then Plaintiff's damages are limited by the agreement. (R. Doc. 61-1 at 10.) "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. In analyzing whether to decide a declaratory judgment suit, the district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to

grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. Sherwin-Williams Co., 343 F.3d at 387. A declaratory judgment is appropriate in this case because there is an actual controversy between the parties, diversity jurisdiction is present and the Anti-Injunction Act does not apply. *See id.* Defendants argue that sections 15 and 16 the parties' agreement limits Plaintiff's potential damages. Section 15 is a "Limitation of Liability" clause that provides:

> 15. Limitation of Liability. NOTWITHSTANDING ANYTHING ELSE, THE TOTAL LIABILITY, IN THE AGGREGATE, OF SELLER ARISING OUT OF, RELATED TO, OR RESULTING FROM THE ORDER OR CONTRACT OR THE PERFORMANCE OR BREACH THEREOF, OR THE DESIGN, MANUFACTURE, SALE, DELIVERY, RESALE, REPAIR, REPLACEMENT, INSTALLATION, TECHNICAL DIRECTION OF INSTALLATION, INSPECTION, SERVICE, OPERATION OR USE OF ANY PRODUCT OR SERVICE SHALL BE LIMITED TO THE ACTUAL PURCHASE PRICE AMOUNT PAID BY BUYER TO SELLER FOR THE SPECIFIC PRODUCT/SERVICE GIVING RISE TO THE CLAIM (REGARDLESS OF WHETHER DAMAGES ARE CHARACTERIZED AS ARISING OUT OF BREACH OF WARRANTY, TORT, CONTRACT, OR OTHERWISE).

(R. Doc. 31-8.) Section 16 is a "No Consequential Damages" provision:

> 16. No Consequential Damages, etc.. NOTWITHSTANDING ANYTHING ELSE, UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, OR SPECIAL DAMAGES (INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS OR REVENUE, LOSS OF TOTAL OR PARTIAL USE OF THE PRODUCTS OR SERVICES, DOWNTIME COSTS, AND DELAY COST) EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES OR IF SUCH DAMAGES ARE FORESEEABLE (REGARDLESS OF WHETHER DAMAGES ARE CHARACTERIZED AS ARISING OUT OF BREACH OF WARRANTY, TORT, CONTRACT, OR OTHERWISE).

*Id.* Defendant argues that these clauses limit Plaintiff's potential damages to the actual purchase price Plaintiff paid for the specific product or products which give rise to its claim. (R. Doc. 61-1 at 13.) Further, Defendants argue that Plaintiff's claims for loss of profits or revenue, loss of total or partial use of products or services, downtime costs, and delay costs are barred by the "No Consequential Damages" clause. *Id.*

Plaintiff argues that its negligent misrepresentation claim does not arise out of relate to the contract, the performance or breach of the contract, or any of the other causes stated in the Limitation of Liability clause. (R. Doc. 66 at 13.) Plaintiff argues that its damages were instead caused by Defendants' misrepresentations which induced Plaintiff to enter the agreement before its confection. *Id.* Further, Plaintiff argues that at least one court has suggested that "provisions purporting to release or limit liability apply only to duties created by the contract containing such provisions, and have no application to actions involving negligent misrepresentations *unless they are couched in clear and specific language.*" *Id.* (citing *Williams Field Servs. Grp., LLC v. Gen. Elec. Int'l Inc.*, No. 06-0530, 2008 WL 450374, at *3 (N.D. Okla. Feb, 15, 2008) (applying Colorado law) (emphasis added)). Alternatively, Plaintiff argues that even if sections 15 and 16 apply to Defendants' allegedly tortious conduct that occurred prior to the agreement, Colorado law dictates "these

provisions still do not bar Axis' negligent misrepresentation claim." (R. Doc. 66 at 14.) Finally, Plaintiff argues that under Colorado law these provisions must be interpreted against the drafter, who in this case were the Defendants. *Id.*

The Colorado Supreme Court has outlined the general principles of contract interpretation that the Court must apply to resolve this issue:

> The primary goal of contract interpretation is to determine and give effect to the intent of the parties. The intent of the parties to a contract is to be determined primarily from the language of the instrument itself. In ascertaining whether certain provisions of an agreement are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed. Written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language. Extraneous evidence is only admissible to prove intent where there is an ambiguity in the terms of the contract.
>
> Terms used in a contract are ambiguous when they are susceptible to more than one reasonable interpretation. Absent such ambiguity, we will not look beyond the four corners of the agreement to determine the meaning intended by the parties. The mere fact that the parties may have different opinions regarding the interpretation of the contract does not itself create an ambiguity in the contract.

*Ad Two, Inc. v. City & Cty. of Denver*, 9 P.3d 373, 376-77 (Colo. 2002). Colorado law recognizes that parties to a sales contract involving movable goods can limit or exclude recovery of consequential damages, so long as that provision is not unconscionable. *Gen. Steel Domestic Sales, LLC v. Rising Sun*

*Missionary Baptist Church, Inc.*, No. 11-1332, 2012 WL 1801955, at
*4 (D. Colo. May 17, 2012) (citing Colo. Rev. Stat. § 4-2-
719(b)(3)) (upholding arbitration provision which limited
arbitrator's authority to award consequential damages). Proof of
willful and wanton conduct is sufficient to defeat a limitation of
liability clause in both tort and contract actions. *Engeman
Enters., LLC v. Tolin Mech. Sys. Co.*, 320 P.3d 364, 372 (Colo.
App. 2013).

Plaintiff does not argue that Defendants' alleged
misrepresentations were willful nor wanton. Plaintiff only argues
that the clauses do not limit Defendants' liability and do not
limit Plaintiff's claim for consequential or direct damages. Thus,
the Court must ascertain the express intent of the parties through
the plain language of the agreement. *See Ad Two*, 9 P.3 at 377. The
Court finds that the above-mentioned clauses do not bar Plaintiff's
negligent misrepresentation claim, but merely limit the extent of
Plaintiff's potential recovery. Specifically, Section 15 is
couched in clear and specific language and limits Defendants' total
liability arising out of, related to, or resulting from the order,
performance, or sale between Plaintiff and Defendants to the actual
purchase price paid by Plaintiff to Defendants for the specific
product or service that gave rise to the claim. (R. Doc. 31-8.)
Accordingly, Plaintiff's recovery is limited to "the actual

purchase price amount paid by buyer to seller for the specific product/service giving rise to the claim."

**3.    Motion to Exclude Testimony on Economic Losses**

Defendants argue that Plaintiff's expert, Mr. Davis, is not permitted to testify under Rule 701 or 702 to the economic losses identified in Exhibit A. (R. Doc. 64-1; R. Doc. 64-2.) Plaintiff concedes that Mr. Davis is not a Rule 702 expert. Rather, Plaintiff argues that it will offer factual testimonies of other Axis employees to establish the damages the company suffered. Further, Plaintiff argues that these employees will only testify about damages to which they have personal knowledge that are helpful to determine a fact in issue, and such testimony will not be based on scientific, technical, or other specialized knowledge. (R. Doc. 65 at 2.) However, because Plaintiff's damages, if any, are limited to "the actual purchase price amount paid by buyer to seller for the specific product/service giving rise to the claim," the Court finds that Defendants' request to exclude Mr. Davis' testimony as to economic losses identified in Exhibit A is denied as moot.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment and Declaratory Judgment* **(R. Doc. 61)** is **DENIED IN PART** and **GRANTED IN PART**, as explained above.

**IT IS FURTHER ORDERED** that Plaintiff's potential damages are limited to "the actual purchase price amount paid by buyer to seller for the specific product/service giving rise to the claim."

**IT IS HEREBY ORDERED** that Defendants' *Motion to Exclude Testimony on Economic Losses* **(R. Doc. 64)** is **DENIED AS MOOT**.

New Orleans, Louisiana this _29th_ day of November, 2016.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE